1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

2-WAY COMPUTING, INC.,                    )
                                          )          Case No. 2:11-cv-00012-JCM-PAL
                          Plaintiff,      )
                                          )          **ORDER**
vs.                                       )
                                          )
NEXTEL FINANCE CO., et al.,               )
                                          )
                          Defendants.     )
_____      )

      The district judge referred the parties' claim construction dispute to the undersigned for decision. The court held a *Markman* hearing on December 6, 2011.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996) (patent claim construction defines the scope of the patentee's rights and is a question of law decided by the court).  Mark Borchese and Paul Stewart appeared on behalf of Plaintiff 2-Way Computing, Inc.  Kristopher Reed, Steven Moore and William Boice appeared on behalf of Defendants Sprint Solutions, Inc., Nextel Finance Company, Sprint United Management Company, Nextel of California, Inc., Nextel Boost of California, LLC, and Nextel Communications, Inc. ("Sprint"). The court has considered Plaintiff's Opening Claim Construction Brief (Dkt. #59), Defendants' Opening Claim Construction Brief (Dkt. #60), Plaintiff's Responsive Brief (Dkt. #71), Defendants' Responsive Brief (Dkt. #70) and the arguments of counsel at the December 6, 2011, hearing.

      After the hearing, Defendants filed a Motion for Leave to File Notice of Alternative Claim Construction (Dkt. #87) on December 22, 2011.  Plaintiff did not file a response to this motion.  Plaintiff filed a Notice of Supplemental Authority Regarding Pending Claim Construction Briefing (Dkt. #91) on January 31, 2012.  Defendants proposed an alternative claim construction to the term "audio responsive input unit" in view of the discussion at the claim construction hearing which Defendants offer to clarify its proposed construction of the term.

Plaintiff's supplemental authority advises the court of a recent decision in *HTC Corp. v. Ipcom GMBH & Co.*, decided by the Federal Circuit January 30, 2012, a copy of which is attached to the notice. On February 2, 2012, 2-Way filed a Second Notice of Supplemental Authority Regarding Claim Construction Brief (Dkt. #92) advising the court of the Federal Circuit's decision in *Thorner v. Sony Computer Entertainment*, 669 F.3d 1362 (Fed. Cir. 2012) a copy of which is attached to the notice.  On May 10, 2012, Defendants filed another Notice of Supplemental Authority (Dkt. #97) advising the court of the Federal Circuit's decision in *Chicago Bd. Options Exchange, Inc. v. Int'l Sec. Exch., Inc.,* 677 F.3d 1361 (Fed. Cir. 2012), a copy of which is attached to the notice.

## BACKGROUND

This is an action brought by Plaintiff 2-Way Computing, Inc. ("2-Way") for patent infringement. 2-Way accuses Sprint of infringing U.S. Patent No. 5,434,797 entitled "Audio Communication System for a Computer and Network" ("the '797 patent").  2-Way describes the patent as disclosing an audio communication system that allows the user to talk with other users over a shared network, rather than having to rely on traditional telephone lines.  The user can use a computer to place a call and continue to work on other applications and perform other tasks while the audio communication system is operating, and does not need to use a standard telephone.  2-Way accuses Sprint of infringing 23 of the 32 claims of the '797 patent by making, using, selling, importing and/or offering to sell audio communication products and/or services, including mobile devices that support Push-To-Talk or Direct Connect communications.  2-Way also accuses Sprint of actively inducing others to infringe and contributing to others' infringement in violation of 35 U.S.C. § 271.  Sprint filed a counterclaim asserting the '797 patent is invalid and not infringed.

Robert Barris is named as the inventor of the '797 patent.  2-Way filed the application for the patent that was ultimately issued as the '797 patent on June 15, 1992.  The Patent Office initially rejected the claims.  2-Way amended some of the claims to address the rejection and argued over the rejections.  The Patent Office issued 2-Way a Notice of Allowability on January 24, 1995.  The '797 patent was issued July 18, 1995.

On October 25, 2005, 2-Way initiated an ex parte reexamination request that the Patent Office re-evaluate the patentability of all claims in light of additional prior art it submitted.  The Patent Office

1  granted the request for reexamination and sent out a First Office Action confirming the patentability of

2  dependent claims 6, 7 and 16, and independent claim 15, but rejecting the remaining claims in view of

3  certain prior art.  2-Way amended some of the claims, added new claims, and submitted arguments

4  explaining why it believed the claims were patentable in view of the cited prior art.  The Patent Office

5  again confirmed patentability of some claims, but rejected other claims in light of certain prior art.  The

6  reexamination certificate was issued by the Patent Office September 2, 2008.

7       The parties submitted a proposed discovery plan and scheduling order which requested special

8  scheduling review (Dkt. #27) March 29, 2011.  The parties disclosed their asserted claims and

9  preliminary infringement contentions and preliminary invalidity contentions, and exchanged their

10  proposed claim terms for construction.  The parties also completed their claim construction discovery

11  and have now submitted their claim construction briefs and responsive briefs.

12       The parties agree the court should address the construction of five disputed phrases in the '797

13  patent, but disagree whether the court should make a determination of invalidity at the claim

14  construction stage.  2-Way argues determination of invalidity is premature.  Sprint urges the court to

15  decide whether claim terms are indefinite under 35 U.S.C. § 112 ¶ 2 during claim construction arguing

16  that the Federal Circuit has stated that claim construction and indefiniteness are "inextricably

17  intertwined."

18                           **DISCUSSION**

19  **I.     Legal Standard for Claims Construction.**

20       Patent infringement analysis involves two steps: (1) "the proper construction of the asserted

21  claim;" and (2) "a determination as to whether the accused method or product infringes the asserted

22  claim as properly construed."  *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1581-82 (Fed. Cir.

23  1996) (*citing Markman*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996)).

24  Interpretation and construction of patent claims is a matter of law for determination exclusively by the

25  court.  *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001); *Affymetrix,*

26  *Inc. v. Hyseq, Inc.,* 132 F. Supp. 2d 1212, 1218 (N.D. Cal. 2001) (*citing Markman,* 517 U.S. 370

27  (1996)).  In *Markman,* "[t]he Supreme Court also acknowledged that the Court's role was limited to

28  interpreting the contents of the patent as a document, leaving to the jury the interpretation of the

construction of the devices alleged to infringe the patent – and that the line drawn between these roles may be a fine one." *Chad Industries, Inc. v. Automation Tooling Systems, Inc.,* 938 F. Supp. 601, 603-04 (C.D. Cal. 1996) (*citing Markman*, 517 U.S. at 379). The court's duty at the claim construction stage is only to interpret disputed claims. *Id.; see also Wang Labs, Inc. v. Mitsubishi Elect. Amer., Inc.,* 103 F.3d 1571, 1583 (Fed. Cir. 1997).

To construe the asserted claims, the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history. *Interactive Gift,* 256 F.3d at 1582 (*quoting Vitronics,* 90 F.3d at 1582). The intrinsic evidence "is the most significant source of the legally operative meaning of disputed claim language." *Vitronics*, 90 F.3d at 1582. In examining the intrinsic evidence, the court must look first to the words of the claims themselves. *Affymetrix*, 132 F. Supp. 2d at 1218; *see also Vitronics,* 90 F.3d at 1582; *Bell Comm. Research, Inc. v. Vitalink Comm. Corp.*, 55 F.3d 615, 620 (Fed. Cir. 1995); *North Amer. Vaccine, Inc. v. Amer. Cyanamid Co.*, 7 F.3d 1571, 1575 (Fed. Cir. 1993), *cert. denied*, 511 U.S. 1069 (1994). The plain language of the claim defines the boundaries and scope of the claim. *Teleflex, Inc. v. Ficosa North Amer. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002) (*citing Bell Comm.,* 55 F.3d at 619-20. "[T]he language of the claim frames and ultimately resolves all issues of claim interpretation." *Id.* (*quoting Abtox, Inc. v. Exitron Corp.,* 122 F.3d 1019, 1023 (Fed. Cir. 1997)). It is the claims, not the specification, that "provide the measure of the patentee's right to exclude." *Johnson & Johnston Assoc., Inc. v. R.E. Service Co., Inc.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002) (*citing Milcor Steel Co. v. George A. Fuller Co.,* 316 U.S. 143, 146 (1942)).

The language of the claims "must be construed objectively, as 'one skilled in the art would construe [it]." *Chad Industries,* 938 F. Supp. at 608 (*citing SmithKline Diag. v. Helena Lab Corp.,* 859 F.2d 878, 882 (Fed. Cir. 1988); *see also Affymetrix,* 132 F. Supp. 2d at 1218 (words to be given their ordinary and customary meaning unless it is clear from the specification and prosecution history that the inventor intended a different meaning). While examination of the language of the actual claims is the court's first and foremost duty, the court should also interpret the claims in view of the specification. *See Vitronics*, 90 F.3d at 1582; *Affymetrix,* 132 F. Supp. 2d at 1218 (*citing Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1250 (Fed. Cir. 1998)). In *Vitronics,* the court held:

1
2
3

> The specification contains a written description of the invention which must be clear and complete enough to enable those of ordinary skill in the art to make and use it. Thus, the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.

4   90 F.3d at 1582.  The court may also consider the prosecution history, if necessary.  *Id.*

5   In the majority of cases, "an analysis of the intrinsic evidence alone will resolve any ambiguity in

6   a disputed claim term."  *Id.* at 1583.  Moreover, in cases in which the intrinsic evidence unambiguously

7   describes the scope of the patent and defines the claim language, the court may not rely on extrinsic

8   evidence of any kind.  *Pall Corp. v. Micron Separations, Inc.,* 66 F.3d 1211, 1216 (Fed. Cir. 1995).  If

9   however, the claim terms are still ambiguous after evaluating the intrinsic evidence, the court may look

10  to extrinsic evidence, or any evidence external to the file wrapper of the patent.  *Vitronics,* 90 F.3d at

11  1584.  Examples of extrinsic evidence include expert testimony, inventor testimony, dictionaries,

12  treatises, and articles.  *Id.*  Prior art references may also be included in extrinsic evidence, even if those

13  references are not cited in the patent history.  *Id.*  However, "[s]uch instances will rarely, if ever, occur."

14  *Interactive Gift*, 256 F.3d at 1332 (*citing Vitronics*, 90 F.3d at 1585).

15  The Federal Circuit indulges a "heavy presumption" that a claim term carries its ordinary and

16  customary meaning.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc)

17  (quotation omitted); *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir.

18  1999); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1341 (Fed. Cir. 2001); *Kegel Co., v. A.M.F. Bowling, Inc.*,

19  127 F.3d 1420, 1427 (Fed. Cir. 1997); *C.C.S. Fitness, Inc., v. Brunswick Corp.*, 288 F.3d 1359, 1366

20  (Fed. Cir. 2002); *Golight v. Wal-Mart Stores, Inc.,* 355 F.3d 1327, 1332 (Fed. Cir. 2004).  There are four

21  ways the heavy presumption of ordinary meaning can be overcome:

22          1.      if the patentee acted as his own lexicographer and clearly set forth

23                  a definition of the disputed claim term in either the specification or

24                  prosecution history.  *C.C.S. Fitness*, 28 F.3d at 1366;

25          2.      if the intrinsic evidence shows that the patentee distinguished the

26                  term from prior art on the basis of a particular embodiment,

27                  expressly disclaimed subject matter, or described a particular

28                  embodiment as important to the invention.  *Id.* at 1366-67;

-5-

3.      if the claim term chosen by the patentee so deprived the claim of
        clarity as to require resort to the other intrinsic evidence for a
        definite meaning.  *Id*.; and

4.      if the patentee phrased the claim in step-or means-plus-function
        format.

*Id*.

In construing a claim term's ordinary meaning, the court must view the claim terms through the lens of a person of "ordinary skill in the art in question" as of the patent application date. *Phillips*, 415 F.3d at 1313.  "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.*  For example, other claims in the patent may assist in determining a claim term's meaning because claim terms are normally used consistently throughout the patent. *Id.*  Use of a term in one claim can clarify the meaning of the same term in other claims. *Id.* at 1314.  The Federal Circuit has found that "the specification is the single best guide to the meaning of a disputed term, and that the specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication." *Phillips*, 415 F.3d at 1320-21 (citation omitted).

In *Phillips,* the Federal Circuit noted that "[i]n light of the statutory directive that the inventor provide a full and exact description of the claimed invention, the specification necessarily informs the proper construction of the claims." *Goff v. Harrah's Operating Co., Inc.*, 412 F.Supp.2d 1090, 1093 (D. Nev.2005) (*citing Phillips*, 415 F.3d at 1316 (citation omitted)).  In fact, the court found that "[w]e cannot look at the ordinary meaning of the term . . . in a vacuum.  Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history." *Phillips*, 415 F.3d at 1313 (*citing Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005)).  The specification is "always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips,* 415 F.3d at 1316 (*citing Vitrionics,* 90 F.3d at 1582); *Multiform Dessicants, Inc. v. Medzam, Ltd.,* 133 F.3d 1473, 1478 (Fed. Cir. 1998) ("the best source for discerning the proper context of claim terms is the patent specification wherein the patent applicant describes the invention"); *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings,* 370 F.3d

1354, 1360 (Fed. Cir. 2004) ("In most cases, the best source for discerning the proper context of claim terms is the patent specification wherein the patent applicant describes the invention").

The claims define the metes and bounds of the patent's invention. *Phillips*, 413 F.3d at 1313. However, the court may not read limitations from the specification into the claims. *Id.* at 1323. There is a distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim. *Id.* at 1333. This distinction is often difficult to apply in practice. *Id.* Or, as the Federal Circuit explained, "[t]here is sometimes a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification." *Comark Communications, Inc. v. Harris Corp.,* 156 F.3d 1182, 1186-87 (Fed. Cir. 1998). In summary, the claims of the patent define the invention and the specification teaches one skilled in the art to make and use the invention. However, the claims of a patent are not limited by the examples given in the specification, even if the specification describes only a single embodiment, or example, absent a "clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Linear Tech Corp. v. U.S. Int'l Trade Comm.*, 566 F.3d 1049, 1058 (Fed. Cir. 2009) (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004).

**II.   The Parties' Claim Construction Positions.**

| Claim Term | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| audio responsive input unit<br><br>(Claims 1-6, 17, 19, 30-32) | "unit that receives audio input" | "unit that receives audio input without requiring the user to activate a button"<br>Alternatively, "unit that receives audio input without delay caused by the computer station sending a request to talk and waiting for a reply" |
| audio data packets<br><br>(Claims 1, 6, 17, 20, 26, 27, 30-32) | "data structures that include status information and audio data" | "data structures that include separate defined fields for status information and for audio data" |
| managing the operations of the audio communication system<br><br>(Claim 1, 6, 17, 30-32) | ordinary meaning; no construction required | "establishing a connection with other computer station(s), determining when to enable audio input and output by receiving and comparing status information from other computer station(s), and performing arbitration" |

-7-

| information to control the audio communication system (Claim 1, 17, 31, 32) | ordinary meaning; no construction required | "information that permits the user to change the parameters of the audio communication system" |
|---|---|---|
| arbitration value (Claims 6, 27) | "a value that is set for determining which transmission has priority" | "an alphanumeric identifier for a computer station that is compared with at least one alphanumeric identifier for another computer station for determining which station's transmission has priority" |

### A.   Audio Responsive Input Unit.

The phrase "audio responsive input unit" is used in several of the claims of the '797 patent.  Both sides agree that the phrase means a unit that receives audio input from a user.  2-Way argues its proposed claim construction is consistent with the ordinary meaning of the phrase, and merely a simpler way of phrasing the ordinary meaning which is what claim construction is intended to accomplish.  2-Way maintains that its construction is consistent with the ordinary meaning of the words in the claims, the specification, and the prosecution history because nothing in the intrinsic record defines or limits the operation of the claimed "audio responsive input unit."

Sprint argues that the '797 patent specification and claims make it clear that the audio responsive unit cannot be activated to accept audio data by pushing a button, and proposes a claim construction that includes a limitation that the audio responsive input unit is a "unit that receives audio input without requiring the user to activate a button."  Sprint maintains that this construction is consistent with the inventor's description in the specification which differentiated the invention from a prior art Macintosh® system that permitted audio communication over a computer network.  The inventor criticized the Macintosh® system because each user must activate a button to transmit and end the transmission, and because available software interposes a significant delay between when one user speaks and another user receives the voice communication.  The improvement the inventor was describing in the '797 patent was to insure a "gap-free" communication.  Thus, Sprint maintains the inventor specifically sought to dispense with the requirement of pushing a button to activate audio input.

Sprint cites portions of the testimony of 2-Way's expert, Thomas Blackburn, to support its argument that the patent specification disparaged pushing a button to implement data transmission. Sprint argues that by criticizing the delay a button-push system requires, the '797 patent specifically and

unmistakably disclaims that the invention covers pushing a button to transmit data.  Sprint cites Federal Circuit authority holding that, where a patent specification disparages a particular feature as disadvantageous compared with the invention of the patent, that feature is properly interpreted to be outside the scope of the claims.  Sprint also relies on Federal Circuit cases holding that repeated derogatory statements concerning one type of material are the equivalent of disavowal of that subject matter from the scope of the patent's claims.  Thus, proper claim construction should make it clear that the inventor disclaimed any interpretation that would permit the claims to cover a system in which audio input is activated by pushing a button.

2-Way responds that nothing in the phrase "audio responsive unit" suggests the presence or absence of a button, and that Sprint is attempting to import a limitation into the claim not warranted by the specification or the prosecution history.  2-Way acknowledges that the specification describes one embodiment in which the audio responsive unit can receive audio input without requiring a user to activate a button.  However, 2-Way relies on Federal Circuit cases holding that the claims of a patent are not limited to a description of a single embodiment, even when only one embodiment is disclosed.

2-Way also acknowledges that the "Background of the Invention" portion of the specification discusses the Macintosh® prior art which requires each user to activate a button to transmit the communication which causes a significant delay between when one user speaks and the other user receives the voice communication.  The background section also states that existing software requires the user to exit a current task in order to enter the voice communication application.  The inventor states that a need exists for a simple voice communication system for use within a computer network to enable real-time, gapless audio conversations to occur across the computer network.

2-Way disputes that these descriptions in the background section overcome the heavy presumption of ordinary meaning of the term "audio responsive unit" for several reasons.  First, the background section refers to existing software and does not mention the term "audio responsive unit".  Although statements in the specification can restrict the scope of the claims, this only occurs when the patentee demonstrates an intent to deviate from ordinary and accustomed meaning of a claim term by redefining the term, or by characterizing the invention in the intrinsic record using words or expressions of manifest exclusion or restriction, representing a clear disavowal of the claim's scope.  Second, general

1   statements indicating that an invention is intended to improve upon prior art are not interpreted to

2   disclaim every feature of every prior art device discussed in the background art section of the patent.

3   Finally, assuming arguendo this section stated that the elimination of an activation button was an

4   important intended benefit, claims are not limited to structures that achieve every advantage or feature

5   described as significant or important in the specification.  There is no requirement that every claim in an

6   invention be limited to encompass all of the advantages or purposes claimed.  2-Way asserts that Mr.

7   Barris invented a communication system with numerous advantages over the system described in the

8   background of the patent.  However, the claims are directed broadly and properly to systems that

9   incorporate only some of those advantages.

10          After the Markman hearing, Defendants filed a Motion for Leave to File Notice of Alternative

11   Claim Construction (Dkt. #87).  The motion submits a proposed alternative claim construction for the

12   term "audio responsive input unit" in view of the discussion at the claim construction hearing on

13   December 6, 2011.  Sprint proposes to clarify its construction of the term "audio responsive unit".

14   Sprint's alternative claim construction of the term would define it as a "unit that receives audio input

15   without delay caused by the computer station sending a request to talk and waiting for a reply."

16          At the claim construction hearing, counsel for Sprint argued that he believed that the crux of the

17   disagreement in the parties' claim construction arguments on this term involves what the audio input

18   unit is responsive to.  Sprint's position is that the audio responsive unit "could be essentially responsive

19   to anything but a button push, because that involves a request/reply handshake."  Tr. of Markman

20   Hearing, Dkt. #88, 45:10-22.  Counsel for Sprint argued that the patent was intended to address two

21   disadvantages of the prior art: (1) the button; and (2) the delay caused by the request/reply handshake.

22   Counsel for Sprint argued that these two disadvantages were really the same problem.  *Id*. 46:2-8.

23   Counsel for Sprint argued that "the delay is actually the handshake."  *Id*. 17-19.  Sprint argued that the

24   button is what caused the delay, which is what the inventor criticized in the patent.  Counsel for Sprint

25   conceded, in response to an inquiry from the court, that just because the inventor criticized the button did

26   not mean that his invention necessarily intended to eliminate the button.  Rather, the inventor seemed to

27   be describing a software application that eliminated the problem that the button creates.  *Id*. 48:10-15.

28   Counsel for Sprint then acknowledged that the court's questions perhaps illustrated a criticism of

Sprint's claim construction and "perhaps what we should be focusing on is the–is the handshake issue." *Id*. 23-25.  Counsel for Sprint went on to acknowledge that Sprint's proposed claim construction for this term was asking the court to import language that was not found in the claim itself.  *Id*. 49:3-5. Admitting that the limitation Sprint proposes is not contained in the claim itself, counsel for Sprint argued at the hearing that the limitation it initially proposed is based on the inventor's disparagement of the prior art.  Specifically, Sprint relied on the testimony of 2-Way's expert, Mr. Blackburn, who testified that the inventor disparaged the prior art because the button caused the need for the handshake, which caused the problem, the delay.  *Id*. 14-24.  Counsel for Sprint went on to concede that the problem the inventor was criticizing is the delay that occurred through pushing a button.  *Id*. 50:2-10.

The court then inquired of counsel for Sprint why the inventor could not patent a device that presents a button that still avoids the request/reply handshake.  *Id*. 51:2-4.  Counsel for Sprint replied that "that might be possible."  *Id*. at 5.  After a number of questions posed by the court, counsel for Sprint suggested that the claim construction dispute "should not be whether or not you push a button, but whether or not, there is a–there is a delay that this–this patent cannot have a–a delay due to a handshake because that's the very thing that the inventors were trying to avoid."  *Id*. 52:5-10.

Counsel for Sprint also conceded during oral argument that the specification did not use the term button in the specification when it discussed the handshake and the delay problem.  *Id*. 54:5-7. However, he argued that it was quite clear from the specification that what was criticized in the prior art was that the button caused the delay.  *Id*. 7-11.  Thus, he argued that Sprint's proposed construction would not allow Plaintiff "to insert [sic] a patent over something that we think they criticized in the prior art."  *Id*. 15-18.  Thus, counsel for Sprint argued that Sprint was not attempting to narrow the claim to the preferred embodiment which is sound activated.  *Id*. 55:1-4.  Rather, Sprint's argument is that avoiding the request/reply handshake delay can occur in other ways (other than sound activated), but just can't be done with what the inventor criticized, i.e. a button.  *Id*. 4-6.

The court finds that Sprint's alternative proposed claim construction that an audio responsive input unit is a "unit that receives audio input without delay caused by the computer station sending a request to talk and waiting for a reply" should be adopted as the ordinary and customary meaning of the phrase as one skilled in the art would construe it as of the patent application date.  The court agrees with

2-Way that Sprint's first proposed construction would import a limitation not found in the claim or in the specification. Sprint acknowledges that there is nothing in the claim itself or the specification that imports the limitation that a button may not be used in the claim construction it proposes. Rather, Sprint's proposed claim construction is based on the inventor's disparagement of the prior art that the button caused the need for the handshake which caused the delay the invention was intended to avoid.

It is well established that the words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and the prosecution history. *Phillips*, 415 F.3d 1303, 1313. Sprint argues one of the exceptions to the general rule applies because the patentee disavowed the claim's scope, by disparaging use of a button in the prior art. The Federal Circuit has held that when a patentee disavows the full scope of a claim term, either in the specification or during prosecution, the strong presumption against ordinary and customary meaning does not apply. *Vitronics Corp.*, 90 F.3d 1576, 1580. As the Federal Circuit has recently reaffirmed, the standard for disavowal of a claim is exacting. *Thorner v. Sony Computer*, 699 F.3d 1362, 1366 (Fed. Cir. 2012). If the specification makes it clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent even though the language of the claims, without reference to the specification, might be broad enough to encompass the feature in question. *Id.*, citing *Scimed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.,* 242 F.3d 1337, 1341 (Fed. Cir. 2001). An intent to deviate from ordinary and accustomed meaning of a claim term may be shown if the patentee manifestly excludes or restricts the meaning of a claim term in the specification. *Id.*, citing *Teleflex, Inc. v. Ficosa N.Am. Corp.,* 299 F.3d 1313, 1325 (Fed. Cir. 2002). A manifest exclusion or restriction of the meaning of a claim term constitutes a clear disavowal of claim scope. *Id.* However, in the absence of a clear disavowal of claim scope in the specification or prosecution history, the patentee is entitled to the full scope of his claim language. *Id.*

The court finds Sprint has not established that either the specification or the prosecution history meet the Federal Circuit's exacting standard for disavowal of claim scope that an "audio responsive input unit" imports a limitation that the "unit receives audio input without requiring the user to activate a button." Both sides agree that the claim term means a "unit that receives audio input". The

1    disagreement is whether the court should import a limitation that the unit may not receive audio input by

2    requiring the user to activate a button.  Nothing in the claim or specification makes it clear that the

3    invention does not include use of a button.  From reviewing the intrinsic evidence, the court concludes

4    that what the inventor disparaged in the prior art was the "significant delay between when one user

5    speaks and another user receives the voice communication."

6          The inventor also disparaged the prior art because it required the user to exit the current task in

7    order to enter the voice communication application.  He described how the software available for the

8    Macintosh® then available required both the sender and the recipient of a voice communication to exit

9    their current task and enter the messenging program.  The need for his invention, and the advantages it

10   offered were described as providing a voice communication system within a computer network to enable

11   real-time gapless audio conversations across a computer network.  The invention is described as

12   providing a significant reduction in the time between the transmission and reception, of high audio

13   quality achieved by minimizing the number of audible gaps transmitted with a message.  The inventor

14   also describes his invention as an audio communication system designed to operate as a background

15   application, to allow the user to execute other software programs simultaneously, i.e., multi-task.

16   Nothing in the intrinsic evidence suggests to the court that the inventor disavowed use of a button.  What

17   was disparaged in the prior art was the delay caused by the request/reply handshake, and the inability to

18   multi-task during audio communications.  2-Way's proposed construction ignores or writes out the word

19   "responsive" by claiming that an "audio responsive unit" means a "unit that receives audio input."  The

20   court therefore adopts Sprint's alternative proposed claim construction that an audio input unit means a

21   "unit that receives audio input without delay caused by the computer station sending a request to talk and

22   waiting for a reply."

23        **B.    Audio Data Packets**

24        Claims 1, 6, 17, 20 and 30-32 of the '797 patent use the phrase "audio data packets."  2-Way

25   seeks a claim construction that the phrase means "data structures that include status information and

26   audio data."  2-Way argues that this construction is consistent with the ordinary meaning of the phrase,

27   the specification and the prosecution history.  2-Way also maintains that its proposed construction will

28   be easier to understand by a jury than the more technical phrase "audio data packets" which is a key goal

1   of claim construction.  The proposed claim construction is also consistent with the specification which

2   generally describes the audio data packets as "system defined data structures" which include "digital

3   audio data" and "status information."

4         Sprint agrees that audio data packets must contain at least status information, i.e. information

5   about the communication state of the sending computer station, as well as the audio data itself if any is

6   present.  During oral argument counsel for Sprint also maintained that it is quite clear from the patent

7   that status information includes both the state of the computer station, e.g., talking, listening, etc., and

8   the arbitration value.  Tr. 65:21-25.  However, Sprint's proposed claim construction would add language

9   to inform the jury that the status information and audio data must be contained in "separate defined

10   fields for" data within the packet.  Sprint relies on a passage in the specification that it claims makes

11   clear that audio data packets: (1) have different fields for different types of data; and (2) that the field

12   within the packet containing the status information is separate from the field containing the audio data.

13   Sprint contends that status information must be included in every packet and that the only means

14   discussed in the patent for providing status information is to define a separate field in the packet for the

15   status information.  Sprint argues that the patent describes a system in which every packet exchanged

16   contains status information in a separate field that is defined to hold such information.  Sprint also relies

17   on the testimony of 2-Way's expert, Mr. Blackburn, asserting he testified that the data packet must have

18   a field for audio data and a separate field for status information.  Mr. Blackburn objected to Sprint's

19   original proposed construction which used the word "dedicated."  As a result, Sprint revised its original

20   proposed construction to replace the word "dedicated" with "defined," which it argues is supported by

21   the specification which states that the audio data packets have separate "defined" fields for audio data

22   and for status information.

23         2-Way responds that Sprint proposes additional limitations that the data structure must include

24   (1) a separate dedicated field for status information, and (2) a separate dedicated field for audio data

25   which is not supported by ordinary meaning, the specification or the prosecution history.  2-Way argues

26   there is no requirement in the specification that the data structure must include specific dedicated fields

27   for the audio data or status information.  Sprint acknowledges that the specification contains one

28   embodiment of an audio data packet in which a data packet contains 100 bytes of digital data.  However,

1  disclosure of this single embodiment cannot, as a matter of law, limit the claims.  During oral argument

2  counsel for 2-Way indicated that it was not clear what Sprint meant by the term "fields".  Tr. 58:1-3.  In

3  response to questioning, he maintained that the parties' dispute about this construction was not *what*

4  information has to be exchanged in data structures, but *how* the information needs to be presented in the

5  data packet.  Tr. 60:8-14 (emphasis supplied).  The dispute is whether status information and audio data

6  must be presented in what Sprint calls separate defined fields.  *Id*., at 63:14-19.  2-Way does not

7  understand what additional limitations that construction imposes, and sees nothing in the patent that calls

8  for separate defined fields.  *Id*., 21-24.  As 2-Way understands Sprint's position, use of the term "fields"

9  doesn't exclude anything and therefore adds nothing other than confusion.  *Id.,* 64:1-9.

10         Sprint's proposed claim construction relies on the specification's description of an embodiment

11  which defines "audio data packet."  8:3-10.  The example given in the embodiment cited was a packet of

12  data containing 100 bytes of digital data, at least 2 of which holds status information, and the remaining

13  98 are reserved for digital audio data.  During oral argument, counsel for Sprint stated he was not trying

14  to limit the patent to this embodiment.  Rather, he argued that the patent is abundantly clear that there

15  must be structure to the data, and that the "the key is, you can't mix up your audio data with your status

16  data, your state and your arbitration data, otherwise the other computer station is not going to know

17  what's what."  Tr. 67:14-23.  Counsel for Sprint argued that he was not "wedded to the word "field" and

18  that the word "location" might work as well."  *Id.,* 72:12-13.  What Sprint's proposed construction is

19  attempting to address is that the patent requires separate places that the computer would recognize that

20  different data exists.  *Id*., 13-16.  The dispute between the parties is not what needs to be in the data

21  packet, but where it needs to be.  *Id*., 73:23-25.  Sprint's proposed construction is intended to inform the

22  jury that information in the data packets must have organization.  *Id*., 74:21-24.

23         The court finds that 2-Way's proposed claim construction should be adopted.  The primary

24  example relied upon by Sprint in support of its proposed claim construction relies on an embodiment

25  contained in the patent specification which provides:

26               In the present embodiment, the system moves audio data in data packets.  A
             packet of data is a system defined data structure with a given storage
27           capacity.  The data packets of this system are defined to contain up to 100
             bytes of digital data.  Of the available 100 bytes of data, at least 2 bytes of

28

-15-

1    data are defined as fields in each data packet to hold status information. The
2    remaining 98 bytes are reserved for digital audio data.

3    '797 Patent 8:3-10.

4          Nothing in the intrinsic record supports Sprint's proposed limitation. Both sides agree that the

5    packet of data must include both audio data and status information. The intrinsic records does not

6    specify that this data be contained in a separate dedicated or defined field. The embodiment Sprint relies

7    upon defines a packet of data as "a system defined structure with a given storage capacity" that holds

8    status information and audio data. The specification defines the term. It does not require a construction

9    that the data be located in separate defined fields. The court finds that the intrinsic evidence

10   unambiguously defines this claim term. Therefore, the court may not rely on extrinsic evidence of any

11   kind. *Pall Corp.*, 66 F.3d at 1216. The specification is the best guide to the meaning of this disputed

12   term and acts as a dictionary when it expressly defines terms. *Phillips*, 415 F.3d 1320-21. However, the

13   testimony of 2-Way's expert, Blackburn, does not suggest the construction Sprint proposes. Rather,

14   reviewing the portions of his testimony cited, it appears Mr. Blackburn was attempting to convey that the

15   status information and audio data was separated by "allocation of bytes". Sprint's proposed construction

16   would import a limitation not supported by the intrinsic record.

17          **C.      "Managing the Operations of the Audio Communication System"**

18          The phrase "managing the operations of audio communication system" is used in claims 1, 16,

19   17, and 30-32. 2-Way argues that the phrase "managing the operations of audio communication system"

20   does not require a construction because the phrase consists of commonly understood words and no

21   further clarification or elaboration is required for the jury to understand it. If the court determines it

22   would be helpful to the jury to use different words, 2-Way proposes that its ordinary meaning is

23   "directing functions of the audio communication system." 2-Way argues that the specification includes

24   information on five principle tasks and several other tasks that can be performed by the audio

25   communication system. However, there is nothing in the specification that requires that "managing the

26   operations" must include any one of these tasks or, the three specific tasks listed in Sprint's proposed

27   construction. 2-Way points out that the disputed phrase "managing the operations of the audio

28   communication" appears as part of a longer claim limitation, the purpose of which is clearly to allow for

1    multi-tasking.  Finally, 2-Way maintains that there is nothing in the prosecution history that narrowed or

2    altered the meaning of "managing the operations of the audio communication" in the manner Sprint's

3    proposed construction suggests.

4           Sprint maintains that the "computer station controller" which the parties agree means "a

5    hardware or software component located solely within a single device" must, at a minimum, perform

6    three specific functions as part of its management role.  Sprint again relies on testimony of 2-Way's

7    expert, Mr. Blackburn, to support its arguments that the computer station controller must establish a

8    connection with another computer station in managing the operations of the audio communication

9    system.  Sprint also relies on language in the specification that describes establishing a connection

10   between two computer stations as a necessary step in "carrying out audio communication between users

11   of at least two computer stations in a computer network."  Sprint asserts that this construction is self

12   evident because, unless the two computer stations are connected, no communication can occur.  The user

13   establishes a connection with another user by selecting that other user's name from the user interface on

14   the computer screen.  A user must disconnect from one remote user and establish a connection with

15   another remote user by accessing the appropriate menus on the user interface screen.  Sprint contends

16   that connecting and disconnecting are aspects of managing the audio communication system, and that

17   the only mechanism described in the patent for implementing these steps is the computer station

18   controller.  Thus, the court should adopt its proposed claim construction that "managing the operations

19   of the audio communication system" means "establishing a connection with other computer station(s),

20   determining when to enable audio input and output by receiving and comparing status information from

21   other computer station(s), and performing arbitration."

22          During oral argument counsel for 2-Way reiterated arguments in its brief that the term "managing

23   the operations" does not require any claim construction because jurors understand what it means to

24   manage the operations of something.  Citing *O-2 Micro International Ltd. v. Beyond Innovation

25   Technology Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008), counsel for 2-Way argued that, while the court

26   must resolve the parties' claim construction disputes, the court is not required to construe claim terms

27   that have well understood meaning.

28   / / /

1    Counsel for Sprint acknowledged that its proposed claim construction "is awfully long".

2    However, the construction was proposed because Sprint's initial concern was that the Plaintiff would try

3    to argue that the controller could be distributed throughout the system as a whole. Tr. 81:3-10. 2-Way

4    did not make this claim and agrees the controller is on a single device. *Id*., 11-13. Sprint's proposed

5    construction is intended to clarify to the jury that something in the system the patent describes has to

6    establish a connection, determine when to enable input and output and do arbitration. *Id*., 19-25. Sprint

7    believes it is quite clear that the computer station controller does these three functions. *Id., 82:1-4*.

8    Sprint's proposed construction is intended to advise the jury that these three functions must be done at

9    the controller level, which is a piece of software or hardware that is on the computer station. *Id*., 5-10.

10   As 2-Way acknowledges that the managing function is performed by a single device, Sprint's proposed

11   construction would inform the jury that the controller performs the three functions specified. *Id*., 83:1-7.

12   Because the parties' dispute that the controller performs these three functions an ordinary meaning

13   construction will essentially ask the jury to construe the meaning of the claim itself. *Id*., 7-14. The

14   Federal Circuit's holding in *0-2 Micro* required the court to resolve such disputes. *Id.,* 15-17.

15   Sprint disputed that it was attempting to import a limitation from the specification. Its proposed

16   construction is not intended to restrict the controller to only those three functions, but to clarify the

17   controller must do at least these three things. *Id*., 18-25. Sprint maintains that while the controller could

18   do twenty different things, it must do these three things because the patent is abundantly clear that this is

19   a peer-to-peer system and that each computer station is responsible for doing the connection for

20   determining when to turn the audio on or off by comparing the status information and by performing

21   arbitration. *Id*., 84:3-10. Sprint relied on testimony from Plaintiff's expert, Mr. Blackburn, to support

22   its proposed construction. According to counsel for Sprint, Mr. Blackburn disagreed that the controller

23   must establish the connection, but agreed that the controller has to determine when to turn on and off the

24   audio, and also does the arbitration. *Id*., 85:18-24. Mr. Blackburn offered testimony as an expert in

25   what people skilled in the art would understand from the patent. *Id*., 85:25-86.

26   Counsel for 2-Way responded that 2-Way agreed that something needs to perform the three

27   functions Sprint describes, but argued that this is not what the patent claimed. *Id*., 87:5-6. The claim is

28   clear that the controller simply has to manage the operations while something else is going on. *Id*., 6-9.

1   The term "manage the operations" is simple and straightforward and no claim construction is required.

2   Construing the claim as Sprint proposes would read these three operations into the claim when neither

3   the plain language of the patent or the specification require that these three specific operations must be

4   managed to meet the limitations of the claim. *Id.*, 88: 12-19.

5       Both sides rely on the Federal Circuit's *O-2 Micro* case to support their positions.  In *O-2 Micro*

6   the Federal Circuit found the district court erred when it failed to resolve the parties' dispute concerning

7   the scope of the asserted claims.  During claim construction the parties disputed whether or not the term

8   "only if" allowed for exceptions.  The Plaintiff contended that the "only if" limitation only applied

9   during "steady state operation," while the Defendants contended that the "only if" limitation applied at

10  all times without exception.  The district judge concluded that the term needed no construction because

11  its ordinary meaning was apparent.  The Federal Circuit found the court erred because, although the

12  parties did not dispute the meaning of the words themselves, their dispute was over the scope that was

13  encompassed by the language.  531 F.3d at 1361.  The court found that a determination that a claim term

14  "needs no construction" or has "plain and ordinary meaning" may be inadequate when reliance on the

15  term's "ordinary" meaning does not resolve the parties' dispute.  *Id*.  The ordinary meaning of the term

16  "only if" did not resolve the parties' dispute about whether the "only if" limitation applied at all times

17  without exception, or only applied during " steady state operation".  The Federal Circuit therefore found

18  that the district court erred by not resolving this dispute over the scope of the asserted claims.  *Id*. at

19  1362.  However, the Federal Circuit reiterated that district courts are not required to construe every

20  limitation present in a patent's asserted claim.  It reiterated that claim construction is not an obligatory

21  exercise in redundancy.  *Id.* citing *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir.

22  1997) (internal quotations omitted).

23      In this case the parties agree that "managing the operations" has a common sense ordinary

24  meaning.  The dispute is whether the controller must perform at least the three functions that Sprint's

25  proposed construction addresses.  Claim construction resolves disputed meanings and technical scope, to

26  clarify and when necessary to explain what the patent covered for use in the determination of

27  infringement.  *Id.*  "When the parties present a fundamental dispute regarding the scope of a claim term,

28  it is the court's duty to resolve it." *Id.*  The court finds that Sprint's proposed construction would import

1    limitations from the specification and single embodiment into the claims.  The claims of the patent itself

2    do not support Sprint's proposed construction.  The court agrees with 2-Way that the term "managing

3    the operations" has a plain and ordinary meaning, and no further claim construction is required.

4              **D.     Information to Control the Audio Communication System**

5              Claims 1, 17, and 32 of the '797 patent use the phrase "information to control the audio

6    communication system."  2-Way does not propose a construction for this phrase asserting it consists of

7    commonly understood words which do not require further clarification or elaboration for the jury.  2-

8    Way argues that Sprint's proposed construction limits the meaning of the phrase to changes made by the

9    user, rather than changes made by the system itself.  According to 2-Way, the parties agree that the term

10   "audio communication system" in the phrase does not require any construction, as neither side has

11   offered construction for that term.  There is no need to construe the remainder of the phrase "information

12   to control" as it consists of words the jury will easily understand.  Nothing in the phrase "information to

13   control" requires parameters to be changed by a user as Sprint proposes.  Additionally, there is nothing

14   in the specification that redefines the phrase "information to control the audio communication system."

15   The specification describes different types of information that can control the audio communication

16   system in various embodiments.  2-Way maintains that Sprint's proposed construction reads these

17   disclosed embodiments out of the claim.  Under controlling Federal Circuit authority, a construction that

18   excludes preferred embodiments from the claims is rarely, if ever, correct, and Sprint's proposed

19   construction must therefore be rejected as a matter of law.  Similarly, nothing in the prosecution history

20   of the patent narrowed or altered the meaning of the phrase.

21            Sprint proposes a claim construction for the term "information to control the audio

22   communication system" which recognizes that information must be displayed on a screen on the

23   computer station which the user must be able to use to control the audio communication system, i.e.

24   change the parameters of the system.  Sprint argues that this construction is consistent with the

25   specification, and amendments made during the reexamination of the '797 patent to overcome a prior art

26   rejection.  During the reexamination process, claim 1 was amended to recite "a user interface that

27   displays on a screen information relating to the other application programs that are actively executing

28   and information to control the audio communication system."  The arguments 2-Way made in the patent

1   reexamination process support Sprint's arguments that the use of the information to control the audio

2   communication system cannot be "transparent to the user" but must be both displayed on the screen and

3   capable of being controlled by the user and to change the parameters of the system.

4          During oral argument counsel for 2-Way argued that the plain language of the patent is broad

5   enough to allow either the user or the computer system itself to change the parameters of how the audio

6   communication system is used.  2-Way argued that Sprint's proposed construction equates the meaning

7   of the "control" to "user control", which is narrower than the word "control" itself.  2-Way maintained

8   that there is no definition or disclaimer in the specification which would narrow the "control" function to

9   "user control".  Counsel for 2-Way acknowledged that the claim language refers to a user interface that

10  displays information to control the audio communication system.  The interface displays information,

11  but does not mean that the user necessarily responds to the information.  Rather, the system itself may

12  respond to the information.  Thus, Sprint contends the claim language "clearly permits the device itself

13  to use the information to control the audio system, rather than requiring that it be the user that does so."

14  Tr. Markman Hearing (Dkt. #88), 91:15-21.

15         2-Way also argued that Sprint misunderstood the prosecution history that establishes that there

16  must be a user interface.  The prosecution history does not address the limitation Sprint proposes, which

17  is information to control the audio communication system.  Rather, the prosecution history addressed

18  "the mere existence of a user interface."  *Id.* at 92:5-9.

19         Counsel for Sprint responded that the only purpose for requiring a user interface that displays on

20  a screen would be to permit the user to control the audio communication system.  The court inquired

21  whether the purpose of the user interface that displays on the screen could be to let the user know what

22  the computer is doing.  Counsel for Sprint responded that if "the screen only existed to let the user know

23  what the computer was doing, then that's not an interface.  An interface is something that allows the user

24  to interact with the computer."  *Id.* at 93:11-17.  Sprint argued that 2-Way's ordinary meaning

25  construction would essentially take the word "interface" out of the claim and give it no meaning.

26  Sprint's proposed construction would make it clear to the jury that the computer displays the information

27  on a user interface screen to allow the user to change the parameters, *i.e.*, allow the user to control the

28  audio communication system.

1    The parties' claim construction dispute about this claim phrase is whether the information that is

2    displayed on the user interface screen is for the purpose of allowing the user to control the audio

3    communication system, or whether both the user and the system itself may control the audio

4    communication system.  Adopting 2-Way's proposed ordinary meaning construction would not resolve

5    the parties' dispute.  The court agrees with counsel for Sprint that the claim discloses a user interface

6    that displays information on a screen that allows the user to control the audio communication system.

7    This construction is consistent with the prosecution history and the position taken by 2-Way during the

8    re-examination of the '797 patent in 2007.  A copy of the Response to Final Office Action is attached as

9    Exhibit "7" to Sprint's Opening Claim Construction Brief (Dkt. #60).  Claim One was amended to

10   recite: "a user interface that displays on a screen information relating to the other application programs

11   that are actively executing and information to control the audio communication system."  *Id*, Exhibit "7"

12   at p.2.  2-Way's response to the re-examination of the '797 patent with respect to this amendment argued

13   that neither the Row nor Steagall prior art disclosed such a limitation.  *Id*. at p.12.  2-Way took the

14   position,

15       Instead, Steagall teaches away from a user interface on a computer.
         According to Steagall, the use of a control computer in the conventional
16       interface required "**esoteric** and **specialized knowledge** of the network and
         **computer control** thereof which is **inappropriate and inconsistent with**
17       **the normal use of a telephone**." . . . Steagall taught accommodation of the
         use of a standard telephone in a way that would be transparent to the user .
18       . . . Thus, Steagall teaches away from the claimed limitation.

19   *Id*.  (Emphasis in original).

20       These comments by 2-Way in the re-examination process support Sprint's arguments that the use

21   of the information to control the audio communication system cannot be "transparent to the user".

22   Rather, the information must be displayed on a user interface screen to give the user the information to

23   control the audio communication system.  The court also agrees with Sprint's arguments that 2-Way's

24   proposed ordinary meaning construction would read the word "interface" out of the claim.  The court

25   therefore adopts Sprint's construction.

26       **E.    Arbitration Value**

27       Claims 6, and 27 of the patent use the term "arbitration value."  2-Way construes the term to

28   mean "a value that is set for determining which transmission has priority."  2-Way contends that both

-22-

1  parties appear to agree that the word "arbitration" in the term means "determining which transmission

2  has priority" and that this description is a simpler way of explaining "arbitration" to a jury.  However,

3  Sprint's proposed construction would add limitations to the phrase by defining the term "value" as an

4  alphanumeric identifier, and adding a limitation that this alphanumeric identifier is "for a computer

5  station that is compared with at least one alphanumeric identifier for another computer station."  Nothing

6  in the patent limits the term "arbitration value to an alphanumeric identifier or requires that the value

7  correspond to a particular computer station.  Rather, the value could include words such as "medium-

8  high" or "medium-low" or symbols rather than the alphanumeric identifier.  Similarly, the value could

9  correspond to a specific call, a particular remote user, a data packet, or a computer station.  2-Way also

10  argues that the specification describes the function of the arbitration value consistent with ordinary

11  meaning, and its proposed construction.

12       One embodiment describes how the arbitration value "is used to determine which computer will

13  continue to transmit data if both computers attempt to transmit data at the same time."  The term

14  "alphanumeric identifier" is never used in the specification although the term "value" is used frequently

15  when referring to the arbitration value.  Nothing in the specification restricts what type of value may be

16  used, or requires the arbitration value to be for a computer station, or that the arbitration value be

17  compared with at least one alphanumeric identifier for another computer station as Sprint's claim

18  construction proposes.  The description of a single embodiment in the specification Sprint relies upon is

19  merely an example which may not be used to import the limitations into the claims.

20       2-Way also maintains that the prosecution history is consistent with its proposed construction for

21  the term.  In confirming the patentability of claims 6, 7, 15 and 16 during the reexamination process, the

22  Patent Office reasoned that "the prior art is silent as to . . . the audio data packet . . . further containing

23  data reflecting an arbitration value for determining priority of the communications between the

24  originating and destination stations."  Additionally, the Patent Office noted that "[t]he arbitration value .

25  . . is used for conflict resolution between computer stations on the network . . . ."  This language is

26  consistent, 2-Way argues, with its proposed construction.

27       Sprint agrees that the phrase "arbitration value" is used to determine which computer station's

28  transmission receives priority when two users try to speak at the same time.  However, Sprint disputes

that the term "value" can mean anything other than an alphanumeric identifier.  Sprint again relies on

testimony from 2-Way's expert, Mr. Blackburn, to support its position that the value must be an

alphanumeric identifier.  Sprint asserts Mr. Blackburn concurred that: (1) the arbitration value for one

computer station is compared with another arbitration value for another computer station; (2) to

determine which computer station's transmission should be given priority; and (3) arbitration occurs at

each of the two computer station controllers involved in the communication.  Mr. Blackburn agreed that

the arbitration value can be an alphanumeric identifier.  He only disputed whether zero is included as a

numeric value.  Sprint agrees, and will stipulate, that zero is a number included in the phrase

"alphanumeric identifier."  Therefore, its proposed construction of the term is correct.

During oral argument both parties agreed that claim construction of this disputed term involves a

determination of two separate disputes.  First, whether the arbitration value must be alphanumeric, and

second, whether the arbitration value is associated with a specific computer station.  2-Way maintains

that there is nothing in the patent that requires the arbitration value to be alphanumeric or to correspond

to a particular computer station.  2-Way argued that there is nothing in the specification or file history to

support Sprint's construction, and that Sprint's proposed construction that will create, rather than

resolve, ambiguity on the meaning of this disputed claim phrase.  The term "alphanumeric" does not

appear in any of the claims and nothing in the specification requires that the arbitration value be

alphanumeric.  There is also nothing in the patent that requires the arbitration value to be associated with

a particular computer station as opposed to a specific call or specific user.  2-Way believes that the claim

term is broad enough to cover the situation in which a user may have a unique identifier that he types

into the computer station that gives him priority over others.

Counsel for Sprint argued that the arbitration value must identify the computer station during the

session that is involved in determining who has priority when two users want to talk.  Counsel for Sprint

contended that its proposed construction was an attempt to negotiate a compromised resolution of claim

construction on this term.  Counsel for Sprint maintained that 2-Way's expert endorsed Sprint's

proposed construction during his deposition testimony.  Thus, Sprint's proposed construction accurately

reflects what is claimed in the patent and should be adopted.

/ / /

1    Both sides agree that the arbitration value determines which transmission has priority when one

2    or more users attempt to communicate at the same time.  Sprint's proposed claim construction relies on

3    the testimony of 2-Way's expert to support its claim construction as one skilled in the art would construe

4    it.  Sprint also relies on examples in the specification that explain how the arbitration value works.  The

5    court finds that 2-Way's proposed construction should be adopted.  Informing the jury that the

6    "arbitration value" means "a value that is set for determining which transmission has priority" is a

7    simple way of explaining the claim phrase to the jury.  Nothing in the patent, specification, or

8    prosecution history suggests that the arbitration value must be an alphanumeric value or associated with

9    a specific computer station.  Sprint relies on two examples from the specification which merely describe

10   an embodiment or example of the arbitration value.  The examples do not import the limitation Sprint's

11   proposed claim construction asks the court to adopt.

12   **III.    The Parties' Indefiniteness Arguments**.

13   2-Way argues that it is premature for the court to consider indefiniteness arguments at the claim

14   construction phase.  It relies on cases holding that invalidity and indefiniteness arguments should be

15   deferred until summary judgment motions are filed because of their potentially dispositive, patent-

16   invalidating nature, and because of the high burden of proof required to show indefiniteness.

17   Sprint maintains that there are three terms used in the '797 patent which render the patent invalid

18   and unenforceable.  Specifically, the term "actively executing", which appears in claims 1, 6, 17, 30-32;

19   "computer station controller" which appears in claims 17-20; and the phrase "said station network

20   interface and to transfer said audio data packets to said audio output unit" found in claim 30.

21   Sprint contends that the term "actively executing" recites both an apparatus and a method

22   involving that apparatus which renders the patent invalid under 35 U.S.C. § 112, ¶ 2.  The cases describe

23   this as a hybrid claim and hold that hybrid claims are indefinite because they do not apprise an alleged

24   infringer of when or how infringement occurs.  Specifically, the claims do not state whether direct

25   infringement occurs when the apparatus is made, or whether direct infringement also requires that the

26   apparatus be used.

27   Sprint contends that the term "computer station controller" in claim 17-20 recites two computer

28   station controllers, but does not clearly state which of these computer station controllers is the "said

1    computer station" that must be configured in the stated way or perform the stated functions.  As a result,

2    what is claimed in the invention is not understandable to a person of ordinary skill in the art, and the

3    patent is therefore invalid.  Sprint believes 2-Way may argue the claim should refer to only one computer

4    station controller rather than two, and that the court can correct this error.  However, because the claim

5    language and specifications suggest at least two possible reasonable corrections, the court cannot guess

6    which is the appropriate correction.  The court lacks the authority to correct a claim where at least two

7    possible corrections are reasonable.  If the court cannot determine the error from the face of the patent, it

8    lacks authority to go outside of the patent itself and guess at what was intended.  Additionally, even if

9    the mistake is obvious, which Sprint maintains it is not, the patent is invalid because 2-Way failed to

10   "particularly point out and distinctly claim" what it regards as its invention.  Thus claims 17-20 are

11   invalid because they fail to satisfy the definiteness requirement of 35 U.S.C. § 112, ¶ 2.

12          Finally, Sprint argues that the phrase "said station network interface and to transfer said audio

13   data packets to said audio output unit" contained in claim 30 is incomprehensible in the context of the

14   claim.  Sprint maintains that it is impossible to ascertain the scope of claim 30 without rewriting it which

15   renders it invalid.  The meaning of the phrase is not apparent from the face of the patent and therefore,

16   the court does not have the authority to correct any asserted error even if the error is apparent in the

17   prosecution history.  If the USPTO made an error in printing the claim language of the patent, 2-Way's

18   remedy is to seek a Certificate of Correction from the USPTO under the provisions of 35 U.S.C. § 254,

19   or § 255.  However, as it was issued by the USPTO, claim 30 is invalid for indefiniteness.

20          The court agrees that it is premature to consider whether the claims identified by Sprint are

21   invalid as indefinite at the claim construction stage of this case.  The court agrees with the reasoning of

22   those cases which have found that it is more appropriate to defer these arguments until summary

23   judgment because they are potentially dispositive and would invalidate the patent, and because of the

24   burden of proof required to show indefiniteness.  More importantly, the district judge has referred this

25   case to the undersigned for claim construction purposes, but has not referred this case for decision of

26   dispositive motions.  Additionally, it is perhaps inevitable that some or all of this claim construction

27   order will be appealed to the district judge who will either adopt, affirm, modify, or overrule this order.

28   For these reasons, the court declines Sprint's request to decide whether the disputed terms are invalid as

indefinite under 35 U.S.C. § 112, ¶2 at this time.

Having considered the parties' briefs, arguments, and exhibits,

**IT IS ORDERED** that the disputed claims of the asserted patent are construed as follows:

### U.S. PATENT NO. 5,434,797

| CLAIM TERM | CONSTRUCTION |
|---|---|
| audio responsive input unit | **Sprint's Construction -** "unit that receives audio input without delay caused by the computer station sending a request to talk and waiting for a reply" |
| audio data packets | **2-Way's Construction -** "data structures that include status information and audio data" |
| managing the operations of the audio communication system | **2-Way's Construction -** ordinary meaning; no construction required |
| information to control the audio communication system | **Sprint's Construction -** "information that permits the user to change the parameters of the audio communication system" |
| arbitration value | **2-Way's Construction -** "a value that is set for determining which transmission has priority" |

Dated this 9th day of October, 2012.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE