1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| 2-WAY COMPUTING, INC., | 2:11-CV-12 JCM (PAL) |
| Plaintiff, | |
| v. | |
| SPRINT NEXTEL CORPORATION and SPRINT SOLUTIONS, INC., | |
| Defendants. | |

**ORDER**

Presently before the court is defendants' objections pursuant to local rule IB 3-1, or, alternatively, motion for district judge to reconsider order by the magistrate judge.  (Doc. # 105). Plaintiff filed a response in opposition (doc. # 109), and defendants filed a reply (doc. # 118).

Also before the court is defendants' motion for summary judgment for invalidity of claims. (Doc. # 106).  Plaintiff filed a response in opposition (doc. # 111), and defendants filed a reply (doc. # 116).

Also before the court are plaintiff's objections pursuant to local rule IB 3-1, or alternatively, motion for district judge to reconsider order by the magistrate judge.  (Doc. # 107).  Defendants filed a response in opposition (doc. # 110), and plaintiff filed a reply (doc. # 117).

**I.    Factual Background**

The pending motions do not focus on the factual background of this case.  Therefore, an abbreviated factual background is all that is necessary.

**James C. Mahan**
**U.S. District Judge**

1      The patent at issue is U.S. patent number 5,434,797 entitled "Audio Communication System

2  for a Computer and Network" (the "797 patent").  Robert Barris is named as the inventor of the 797

3  patent.  Plaintiff filed the application for the patent that was ultimately issued as the 797 patent on

4  June 15, 1992.  The Patent Office initially rejected the claims.  Plaintiff amended some of the claims

5  to address the rejection.  The Patent Office issued plaintiff a notice of allowability on January 24,

6  1995, and the 797 patent was issued on July 18, 1995.

7      On October 25, 2005, plaintiff initiated an ex parte reexamination request that the Patent

8  Office reevaluate the patentability of all claims in light of additional prior art.  The Patent Office

9  granted the request for reexamination and sent confirmed the patentability of further claims, but

10  rejected the remaining claims in view of certain prior art.  Plaintiff amended some of the claims,

11  added new claims, and submitted arguments explaining why it believed the claims were patentable

12  in view of the cited prior art.  The Patent Office again confirmed the patentability of some claims,

13  but rejected other claims in light of certain prior art.  The reexamination certificate was issued by the

14  Patent Office on September 2, 2008.

15      Plaintiff describes the patent as disclosing an audio communication system that allows the

16  user to talk with other users over a shared network, rather than having to rely on traditional telephone

17  lines.  The user can use a computer to place a call and continue to work on other applications and

18  perform other tasks on the computer while the audio communication system is operating.

19      Plaintiff accuses defendant Sprint of infringing 23 of the 32 claims of the 797 patent by

20  making, selling, importing and/or offering to sell audio communication products and/or services.

21  Plaintiff accuses defendant Sprint of actively inducing others to infringe and contributing to others'

22  infringement in violation of 35 U.S.C. § 271.  Sprint counterclaimed and asserted the 797 patent is

23  invalid and not infringed.

24      This court referred the parties' claim construction dispute to the magistrate judge for a

25  decision.  The magistrate judge conducted a *Markman* hearing and later issued an order after the

26  hearing.  The parties' objections to the magistrate judge's order will be resolved by the court in this

27  order.

28

**James C. Mahan**
**U.S. District Judge**

**II.      The Magistrate Judge's Order and the Parties' Objections**

Magistrate Judge Leen interpreted and constructed the meaning of the following five claims: (1) audio responsive input unit; (2) audio data packets; (3) managing the operations of the audio communication system; (4) information to control the audio communication system; and, (5) arbitration value.

Magistrate Judge Leen interpreted and constructed three claims in favor of plaintiff and two in favor of defendants. Each party objects to each construction in favor of the other party. The court will address each party's objections in turn.

*A.      De Novo*

The parties agree that this court must review the magistrate judge's order *de novo*. A "district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *Innova Patent Licensing, LLC v. Alcatel-Lucent Holdings*, no. 2:10-cv-251, 2012 WL 2958231, at *1 (E.D. Tex. July 19, 2012) ("Because claim construction is a matter of law, this Court can review a magistrate judge's claim construction *de novo*.").

*B.      Claim Construction Standards*

"A two-step process is used in the analysis of patent infringement: first, the scope of the claims are determined as a matter of law, and second, the properly construed claims are compared to the allegedly infringing device to determine, as a matter of fact, whether all of the limitations of at least one claim are present, either literally or by a substantial equivalent, in the accused device." *Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1323 (Fed. Cir. 2002). The first step is done by the court and the second step is done by the fact finder. *Id.*

"The claims define the scope of the right to exclude; the claim construction inquiry, therefore, begins and ends in all cases with the actual words of the claim." *Id.* (quoting *Renishaw PLC v. Marposs Societa per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998)). "The language of the claim frames and ultimately resolves all issues of claim interpretation." *Id.*

"The words used in the claims are interpreted in light of intrinsic evidence of record, including the written description, the drawings, and the prosecution history, if in evidence." *Id.*

James C. Mahan
U.S. District Judge

- 3 -

1    "Such intrinsic evidence is the most significant source of the legally operative meaning of disputed

2    claim language." *Vidtronics Corp v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

3           When considering the intrinsic evidence, courts first indulge a "'heavy presumption' that a

4    claim term carries its ordinary and customary meaning." *Teleflex*, 299 F.3d at 1325. "[T]he ordinary

5    meaning must be determined from the standpoint of a person of ordinary skill in the relevant art."

6    *Id.* "[A] court may constrict the ordinary meaning of a claim term in at least one of four ways":

7

8           1) "the claim term will not receive its ordinary meaning if the patentee acted as his own
            lexicographer and clearly set forth a definition of the disputed claim term in either the
9           specification or prosecution history";

10          2) "a claim term will not carry its ordinary meaning if the intrinsic evidence shows that the
            patentee distinguished that term from prior art on the basis of a particular embodiment,
11          expressly disclaimed subject matter, or described a particular embodiment as important to
            the invention";
12
            3) "a claim term also will not have its ordinary meaning if the term chosen by the patentee
13          so deprives the claim of clarity as to require resort to the other intrinsic evidence for a
            definite meaning";
14
            4) "a claim term will cover nothing more than the corresponding structure or step disclosed
15          in the specification, as well as equivalents thereto, if the patentee phrased the claim in step-
            or means-plus-function format."
16

17   *CCS Fitness, Inc., v. Brunswick Corp.*, 288 F.3d 1359, 1366-67 (Fed. Cir. 2002) (internal citations,

18   alterations, and quotations omitted).

19          Second, among intrinsic evidence, "the specification is always highly relevant to the claim

20   construction analysis.  Usually it is dispositive; it is the single best guide to the meaning of a

21   disputed term." *Id.* (quoting *Vidtronics*, 90 F.3d at 1582).  "[I]t is always necessary to review the

22   specification to determine whether the inventor has used any terms in a manner inconsistent with

23   their ordinary meaning." *Vidtronics*, 90 F.3d at 1582.  "The specification contains a written

24   description of the invention which must be clear and complete enough to enable those of ordinary

25   skill in the art to make and use it." *Id.*

26          Third, "the prosecution history may demonstrate that the patentee intended to deviate from

27   a term's ordinary and accustomed meaning, i.e., if it shows the applicant characterized the invention

28

**James C. Mahan**
**U.S. District Judge**

using words or expressions of manifest exclusion or restriction during the administrative proceedings before the Patent and Trademark Office." *Teleflex*, 299 F.3d at 1326.

"In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed term." *Id.* "In such circumstances, it is improper to rely on extrinsic evidence." *Id.* Extrinsic evidence may be considered only "if needed to assist in determining the meaning or scope of technical terms in the claims." *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1216 (Fed. Cir. 1995).

C.       *Defendants' Objections*

The defendants objected to the magistrate judge's construction of the following three terms: (1) audio data packets; (2) managing the operations of the audio communication system; and, (3) arbitration value.[1]  The court will address each in turn.

I.       Audio Data Packets

The magistrate judge adopted plaintiff's proposed construction of the "audio data packets" claim–"data structures that include status information and audio data."  In so construing this claim, the magistrate judge found that the intrinsic evidence unambiguously defined this claim term, the intrinsic evidence did not support defendants' proposed limitations, defendants' reliance on plaintiff's expert was misplaced, and, therefore, the court could not rely on extrinsic evidence of any kind.

Defendants object under two theories.  First, defendants make the same arguments that were rejected by the magistrate judge in the first instance.  Defendants argue that a patent specification requires a limitation that the "audio data packets" construction include "separate defined fields for the status information" because the specification states different types of data have different "fields."

. . .

. . .

_____

[1] Defendants also objected to the magistrate judge's finding that it was premature to consider whether the claims identified by Sprint are invalid as indefinite at the claim construction stage. However, instead of arguing this decision by the magistrate judge in their objections, the defendants filed a motion for summary judgment on the invalidity of certain claims.

1    This court, as did the magistrate judge, finds this argument unconvincing. This interpretation

2    is not supported by the intrinsic evidence.  Plaintiff did not act as its own lexicographer and redefine

3    the term, nor did plaintiff disavow the full scope of the term in the specification or file history.

4    Nothing in the passage relied upon by defendants[2] suggests that plaintiff redefined the term "audio

5    data packets" to require that the audio data and status information must be kept in separate fields.

6    Second, defendants object and argue that this court should modify the magistrate judge's

7    construction as follows: "data structures that include status information, which includes an

8    arbitration value and audio data."  Defendants base this argument in part on statements made by

9    plaintiff at the *Markman* hearing and in part on the reasoning that the arbitration value must be

10   included in the status information.

11   The court finds that defendants have taken quotes by counsel and examples provided in the

12   specification out of context.  The entirety of the intrinsic evidence does not support the modification

13   advanced by defendants.

14   The court overrules the objection to the construction of "audio data packets."

15        ii.    Managing the Operations of the Audio Communication System

16   The magistrate judge found that the term "managing the operations of the audio

17   communication system" required no construction and that the plain, ordinary meaning controls.

18   Defendants object by arguing that the ordinary meaning of "managing the operations" should

19   be replaced with the following trio of functional requirements: (1) establishing a connection with

20   other computer station(s); (2) determining when to enable audio input and output by receiving and

21   comparing status information from other computer station(s); and, (3) performing arbitration.

22   This court simply agrees with the magistrate judge's finding that "managing the operations"

23   has a common sense and ordinary meaning.  Defendants' suggested trio of functional requirements

24

25        [2] The pertinent passage in the specification reads: "A packet of data is a system defined data
26   structure with a given storage capacity.  The data packets of this system are defined to contain up to
     100 bytes of digital data.  Out of the available 100 bytes of data, at least two bytes of data are defined
27   as fields in each data packet to hold status information.  The remaining 98 bytes are reserved for
28   digital audio data."

James C. Mahan
U.S. District Judge

is not an ordinary and plain meaning and not otherwise supported by the remaining intrinsic evidence.  The objection is overruled.

                iii.     Arbitration Value

The magistrate judge constructed the claim term "arbitration value" as follows: "a value that is set for determining which transmission has priority."  Defendants object and argue this court should adopt the following construction–"an alphanumeric identifier for a computer station that is compared with at least one alphanumeric identifier from another computer station for determining which station's transmission has priority."

Defendants object for three reasons: (1) the arbitration value must be alphanumeric; (2) the arbitration value has to be tied to a particular station; and, (3) the prosecution history supports this construction.

When construing the claim, the magistrate judge found all of the following in support of the construction: (1) nothing in the patent, specification, or prosecution history suggests that the arbitration value must be an alphanumeric value or associated with a specific computer station; (2) the examples relied on by defendants from the specification merely describe an embodiment or example of the arbitration value; and, (3) the examples do not import the limitation proposed by defendants.

Defendants objections are simply the same arguments made to the magistrate judge in the first instance at the *Markman* hearing.  This court agrees with the construction and the reasoning of the magistrate judge.  The objection is overruled.

        *D.*     *Plaintiff's Objections*

The plaintiff objects to the magistrate judge's construction of the following two claim terms: (1) audio responsive input unit; and, (2) information to control the audio communication system. The court will address each objection in turn.

            I.     Audio Responsive Input Unit

The magistrate judge constructed the claim "audio responsive input unit" as follows: "unit that receives audio input without delay caused by the computer station sending a request to talk and

1   waiting for a reply." This was the defendants' proposed construction. The magistrate judge declined

2   to adopt the defendants' first recommended construction finding that the defendants had not

3   established that either the specification or the prosecution history met the Federal Circuit's exacting

4   standard for disavowal. However, after the *Markman* hearing, defendants' proposed the alternative

5   claim construction ultimately adopted by the magistrate judge.[3] In adopting the alternative proposed

6   construction, the magistrate judge found that the inventor disparaged in the prior art the delay caused

7   by the request/reply handshake and the inability to multi-task during audio communications.

8        The basic disagreement is whether the construction provides meaning for the term

9   "responsive."

10       The court finds two of plaintiff's objections persuasive. First, the disparagement by the

11  inventor of the prior art was "the significant delay between when one user speaks and another user

12  receives the voice communication." The limitation that became part of the magistrate judge's

13  construction was the "delay caused by the computer station sending a request to talk and waiting for

14  a reply."

15       To highlight this distinction, a slightly deeper delve into the facts and patent is necessary.

16  The invention essentially allows the users of two computers to talk to each other while multi-tasking

17  with other applications/operations on the computer. The invention allowed the users and computers

18  to communicate through gapless delays. Additionally, the invention provided an arbitration to

19  determine which computer could speak if both attempted to communicate with the other at the same

20  time.

21       The computer of the user attempting to communicate with the user on the second computer

22  sends out a signal and waits for the second computer to respond that it is ready and able to

23  communicate. Plaintiff argues that this delay in prior art, if any, of the two computers to sync to

24  communicate was the delay criticized in the claim construction. However, the delay actually

25  _____

26       [3] Plaintiff argues that it did not have the chance to oppose the merits of the alternative
    proposal. After reviewing the docket, this court finds that plaintiff made a tactical decision not to
27  oppose the alternative construction proposal and not that plaintiff was actually precluded from
    opposing the alternative construction proposal.
28

**James C. Mahan**
**U.S. District Judge**

disparaged by the inventor of the prior art was the delay between communications between the two users after the two computers have already synced.  The court agrees that limitation in the construction was not consistent with the disparagement by the inventor.

Second, plaintiff argues that the criticized delay is only mild in nature and does not constitute a disavowal.  Plaintiff argues that the specification says nothing about excluding from the claims all systems that incorporate delay.  This court agrees that the disparagement is too mild to rise to the level of clear disavowal.  *See Thorner v. Sony Computer Entm't America LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012) ("Mere criticism of a particular embodiment encompassed in the plain meaning of a claim term is not sufficient to rise to the level of clear disavowal.").  There was no expression of manifest exclusion or restriction as required.

The court finds that the ordinary and plain meaning controls and no construction is necessary.  The claim "audio responsive input unit" is modified by the larger claim limitation "an audio responsive input unit which accepts analog audio waveform signals from the microphone and digitizes the audio waveform signals."  The plain meaning of a person familiar with the art would know the audio input unit is responsive in that it converts voice from analog to digital form.

The court finds the ordinary and plain language controls and the objections on this claim are granted.

ii.	Information to Control the Audio Communication System

The magistrate judge constructed the claim "information to control the audio communication system" as follows: "information that permits the user to change the parameters of the audio communication system." This was defendants' proposed construction and plaintiff now objects. The magistrate adopted this construction because the defendants' proposed construction is consistent with the prosecution history, the position taken by plaintiff during the reexamination of the 797 patent in 2005, and plaintiff's proposed ordinary meaning would have read the world "interface" out of the claim.

Plaintiff argues that its proposed ordinary meaning construction would have resolved all disputes by the parties and that "interface" would not have been read out of the claim.

1    This court finds that the magistrate judge properly relied on the prosecution history and

2    adopts the magistrate judge's construction.   The objections are overruled.

3    **III.   Summary Judgment**

4    Finally defendants filed a motion for summary judgment moving this court to find certain

5    claims are invalid for indefiniteness.

6    *A.      Legal Standard*

7    The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings,

8    depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

9    show that "there is no genuine issue as to any material fact and that the movant is entitled to a

10   judgment as a matter of law." Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is

11   "to isolate and dispose of factually unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317,

12   323–24 (1986).

13   In determining summary judgment, a court applies a burden-shifting analysis.  "When the

14   party moving for summary judgment would bear the burden of proof at trial, it must come forward

15   with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.

16   In such a case, the moving party has the initial burden of establishing the absence of a genuine issue

17   of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213

18   F.3d 474, 480 (9th Cir. 2000) (citations omitted).

19   In contrast, when the nonmoving party bears the burden of proving the claim or defense, the

20   moving party can meet its burden in two ways:  (1) by presenting evidence to negate an essential

21   element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to

22   make a showing sufficient to establish an element essential to that party's case on which that party

23   will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party

24   fails to meet its initial burden, summary judgment must be denied and the court need not consider

25   the nonmoving party's evidence.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

26   If the moving party satisfies its initial burden, the burden then shifts to the opposing party

27   to establish that a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith*

28

**James C. Mahan**
**U.S. District Judge**

- 10 -

1    *Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing

2    party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

3    claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions

4    of the truth at trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th

5    Cir. 1987).

6          In other words, the nonmoving party cannot avoid summary judgment by relying solely on

7    conclusory allegations that are unsupported by factual data.  *See Taylor v. List*, 880 F.2d 1040, 1045

8    (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the

9    pleadings and set forth specific facts by producing competent evidence that shows a genuine issue

10   for trial.  *See Celotex Corp.*, 477 U.S. at 324.

11         At summary judgment, a court's function is not to weigh the evidence and determine the

12   truth, but to determine whether there is a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.*,

13   477 U.S. 242, 249 (1986).  The evidence of the nonmovant is "to be believed, and all justifiable

14   inferences are to be drawn in his favor."  *Id.* at 255.  But if the evidence of the nonmoving party is

15   merely colorable or is not significantly probative, summary judgment may be granted.  *See id.* at

16   249–50.

17         B.      *Indefiniteness Legal Standard*

18         "[P]roof of indefiniteness must meet 'an exacting standard.'"  *Haemonetics Corp. v. Baxter*

19   *Healthcare Corp.*, 607 F.3d 776, 783 (Fed. Cir. 2010) (quoting *Halliburton Energy Servs., Inc. v.*

20   *M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008).  "Only claims not amendable to construction or

21   insolubly ambiguous are indefinite."  *Id.*  "A claim is not indefinite merely because parties disagree

22   concerning its construction.  An accused infringer must thus demonstrate by clear and convincing

23   evidence that one of ordinary skill in the relevant art could not discern the boundaries of the claim

24   based on the claim language, the specification, the prosecution history, and the knowledge in the

25   relevant art."  *Id.*

26         "If the meaning of the claim is discernable, even though the task may be formidable and the

27   conclusion may be one over which reasonable persons will disagree, [the Federal Circuit has] held

28

**James C. Mahan**
**U.S. District Judge**

1    the claim sufficiently clear to avoid invalidity on indefiniteness grounds." *Honeywell Intern., Inc.*

2    *v. U.S.*, 609 F.3d 1292, 1302 (Fed. Cir. 2010).

3        C.    *Discussion*

4            I.    Actively Executing

5        Defendants argue that claims 1, 6, 17, and 30-32 are invalid as indefinite because they are

6    hybrid claims that recite both an apparatus and a method of using that apparatus. *See* 35 U.S.C. §

7    112, ¶ 2; *IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005).  Defendants

8    argue that these claims that recite the phrase "actively executing" are indefinite because the claim

9    recites a system and a method for using that system.

10       Plaintiff distinguishes *IPXL Holdings* and then argues that it is entirely appropriate for an

11   apparatus claim to include functional language describing how the apparatus operates.  Plaintiff

12   argues that claim simply describes the functional capabilities of the computer station controller while

13   other application programs are actively executing.

14       The court agrees with plaintiff.  Claims that use functional language to describe the

15   capabilities of the claimed apparatus are not impermissible mixed method apparatus claims and are

16   understood to one of ordinary skill in the art.

17           ii.    Computer Station Controller

18       Defendants argue that claim 17 (from which claims 18-20 depend) is indefinite because it

19   cites two computer station controllers, but does not clearly state which of these two computer station

20   controllers is the "said computer station controller" that must be configured in the stated way or

21   perform the stated function.  Defendants argue that this is an error in the claim language and the

22   specification suggests at least two possible reasonable correction could be proper and it is not

23   apparent which would be the proper construction.

24       Plaintiff argues that claim 17 contains a simple typographical error because it recites "a

25   computer station controller" but then later refers back to the computer station controller as "a"

26   computer station controller instead of "said" computer station controller.  Plaintiff argues that this

27   is evidence that claim 17 refers to a single computer station.

28

**James C. Mahan**
**U.S. District Judge**

1    A district court may correct a patent only if: "(1) the correction is not subject to reasonable

2    debate based on consideration of the claim language and the specification and (2) the prosecution

3    history does not suggest a different interpretation of the claims." *Novo Indus., L.P., v. Micro Molds*

4    *Corp.*, 350 F.3d 1348, 1354 (Fed. Cir. 2003).

5    For the first prong, the court finds that the claim language and the specification leave no

6    room for reasonable debate that claim 17 refers to a single computer station controller.  This is so

7    because claim 17 calls for a computer station controller that is coupled to a computer station network

8    interface.  Claim 17 later calls for a computer station controller that is in communication with the

9    audio responsive input unit, audio output unit, and mass data storage system.  One of ordinary skill

10   in the art would have understood that the computer station controller in communication with the

11   audio responsive input unit, audio output unit, and mass data storage system must be the same

12   computer station controller that is coupled to a computer station network interface.

13   Under the second prong, the court finds the prosecution history does not suggest any other

14   interpretation.

15              iii.    Said Station Network Interface and to Transfer Said Audio Data Packets to

16                      Said Audio Output Unit

17   This phrase appears in claim 30 and defendants argue it is indefinite because it is impossible

18   to discern the scope of such a truncated limitation.  Defendants also argue that the court should not

19   correct any error because a reader of the patent cannot tell from the face of the patent what the error

20   may be.

21   Plaintiff provides for the court the entire text of claim 30.  When this phrase is considered

22   along with the language of claim 30 in full, it has much more meaning.  Additionally, when

23   considered with the entire text of claim 30, it becomes apparent that this phrase was inadvertently

24   repeated twice in the file history because it appeared in full at the bottom of one page and then

25   appeared in full again at the top of the following page.

26   The court finds that one in ordinary skill in the art would obviously conclude that the

27   repeated language occurred in error.

28

**James C. Mahan**
**U.S. District Judge**

- 13 -

1       The court can fix this error by striking the inadvertently repeated claim language. *Hoffer v.*

2  *Microsoft Corp.*, 405 F.3d 1326, 1331 (Fed. Cir. 2005) ("Here the error was apparent from the face

3  of the patent, and that view is not contradicted by the prosecution history."). Here, as in *Hoffer*, the

4  defendants do not argue that they were prejudiced or even confused by the error. The court strikes

5  the typographical mistake and will not invalidate the patent based on a simple and unmistakable

6  typographical mistake.

7       Accordingly,

8       IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants' objections

9  pursuant to local rule IB 3-1 or, alternatively, motion for district judge to reconsider order (doc. #

10  105) be, and the same hereby, is OVERRULED and DENIED.

11       IT IS FURTHER ORDERED that defendants' motion for summary judgment for invalidity

12  of certain claims (doc. # 106) be, and the same hereby, is DENIED.

13       IT IS FURTHER ORDERED that plaintiff's objections pursuant to local rule IB 3-1 or,

14  alternatively, motion for district judge to reconsider order (doc. # 107) be, and the same hereby, is

15  GRANTED in part and DENIED in part consistent with the foregoing.

16       DATED May 17, 2013.

17

18  _____

19  **UNITED STATES DISTRICT JUDGE**

20

21

22

23

24

25

26

27

28

James C. Mahan
U.S. District Judge

- 14 -