**SNELL & WILMER**
Greg Brower (Nevada Bar No. 5232)
Brian Reeve (Nevada Bar No. 10197)
3883 Howard Hughes Parkway
Suite 1100
Las Vegas, Nevada 89169
Tel:  (702) 784-5200
Fax:  (702) 784-5252
Email:    gbrower@swlaw.com
          breeve@swlaw.com

**KILPATRICK TOWNSEND & STOCKTON LLP**
William H. Boice (*Pro Hac Vice*)
Steven D. Moore (*Pro Hac Vice*)
Matthew M. Lubozynski (*Pro Hac Vice*)
Kristopher L. Reed (*Pro Hac Vice*)
Christopher Schenck (*Pro Hac Vice*)
1100 Peachtree Street, Suite 2800
Atlanta, GA  30309-4528
Tel:  (404) 815-6500
Fax:  (404) 815-6555
Email:    bboice@kilpatricktownsend.com
          smoore@kilpatricktownsend.com
          mlubozynski@kilpatricktownsend.com
          kreed@kilpatricktownsend.com
          cschenck@kilpatricktownsend.com

Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| 2-WAY COMPUTING, INC., a Nevada corporation, <br><br> Plaintiff, <br><br> v. <br><br> SPRINT SOLUTIONS, INC., a Delaware corporation; NEXTEL FINANCE COMPANY, a Delaware corporation; SPRINT UNITED MANAGEMENT COMPANY, a Kansas corporation; NEXTEL OF CALIFORNIA, INC., a Delaware corporation; NEXTEL BOOST OF CALIFORNIA, LLC, a Delaware limited liability company, and NEXTEL COMMUNICATIONS, INC., a Delaware corporation, <br><br> Defendants. | Case No.: 2:11-cv-00012-JCM-(PAL) <br><br> **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF THE APPLICABILITY OF INTERVENING RIGHTS TO BAR DAMAGES AS TO ASSERTED '797 PATENT CLAIMS 1, 3-5, 17-18, AND 20-32** |

AND RELATED COUNTERCLAIM

## **TABLE OF CONTENTS**

I.    Introduction ........................................................................................................1

II.   UNDISPUTED MATERIAL FACTS .................................................................2

    A.    The '797 Patent and the Asserted Claims ...........................................2

    B.    Sprint's Sale and Use of PTT Phones on the iDEN Network ...........................3

    C.    Sprint's Sale and Use of PTT Phones on Its CDMA Network (QChat)..................................................................................................5

    D.    The Accused Products are Accused of Infringing Claims 1, 3-6, 17-18, 20-32 ......................................................................................5

III.  LEGAL ARGUMENT .........................................................................................6

    A.    The Doctrine of Intervening Rights ......................................................6

    B.    All Asserted Claims Except Claim 6 Were Amended or Added During the Reexamination ...................................................................7

    C.    All Asserted Claims that were Amended or Added Were "Substantively Changed" .......................................................................8

    D.    Absolute Intervening Rights ...............................................................10

    E.    Equitable Intervening Rights...............................................................11

        1.    Post-September 2, 2008 Manufacture of Products First Made Prior to September 2, 2008 ..........................................12

        2.    Products First Made After September 2, 2008....................................12

IV.  IV. CONCLUSION............................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*Adrain v. Vigilant Video, Inc.*, No. 2:10-cv-173-JRG, 2013 WL 1984369 (E.D. Tex. May 13, 2013) ............................................................................................... 7

*BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214 (Fed. Cir. 1993) ............................................................................................... passim

*Laitram Corp. v. NEC Corp.*, 163 F.3d 1342 (Fed. Cir. 1998) ............................. 8, 9

*Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350 (Fed. Cir. 2012) 6, 7, 10

*Ohio Willow Wood Co. v. Alps South, LLC*, No. 2:05-CV-1039, 2012 WL 4322541 (S.D. Ohio Sept. 20, 2012) ...................................................................... 8

*Shockley v. Arcan, Inc.*, 248 F.3d 1349 (Fed. Cir. 2001) ....................................... 11

**Rules**

35 U.S.C. § 252 .......................................................................................... passim

35 U.S.C. § 307 .......................................................................................... passim

- ii -

1    Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants Sprint Solutions,

2    Inc., Nextel Finance Company, Sprint United Management Company, Nextel of California, Inc.,

3    Nextel Boost of California, LLC, and Nextel Communications, Inc. (collectively, "Sprint")

4    respectfully move for summary judgment that Plaintiff 2-Way Computing, Inc. ("2-Way") cannot

5    recover any damages for Sprint's alleged infringement of U.S. Patent No. 5,434,797 ("'797

6    Patent") for the asserted claims that were amended or added during the reexamination of the '797

7    Patent due to the doctrine of intervening rights.[1]  This motion is supported by all of the pleadings

8    and papers on file in this case, the following memorandum of points and authorities, the exhibits

9    attached hereto, and any oral argument as the Court may entertain.

10   **MEMORANDUM OF POINTS AND AUTHORITIES**

11   **I.    INTRODUCTION**

12   The doctrine of intervening rights limits a patent owner's right to recover damages for patent

13   claims added or modified during a patent re-examination proceeding in two specific situations.

14   First, if a patent claim is added during or "substantively changed" as a result of a re-examination,

15   the patent owner is forever barred from recovering damages for infringement of the new or

16   modified claims by any infringing product that existed before the conclusion of the re-examination.

17   *See* 35 U.S.C. §§ 252, 307*; BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc*., 1 F.3d 1214, 1220

18   (Fed. Cir. 1993).  In this situation, the public is entitled to claim "absolute intervening rights" in

19   those otherwise infringing products.  Second, the patent owner can also be barred from recovering

20   damages for products created after the re-examination concluded and that are identical to products

21   that existed before the re-examination, so long as the accused infringer had made "substantial

22   preparations" for their manufacture by the end of the re-examination.  This situation is called

23   "'equitable' intervening rights."  *See BIC Leisure*, 1 F.3d at 1220, 1221; 35 U.S.C. §§ 252 and 307.

24

25   _____

26   [1] Sprint vigorously denies any liability whatsoever in this case.  Each of the asserted claims of the
     '797 Patent is invalid and therefore cannot be infringed.  Additionally, Sprint asserts that it does
     not infringe any of the asserted claims of the '797 Patent.  However, if this motion is granted in its

27   entirety, 2-Way would be unable to recover *any* damages for the alleged infringement of the '797
     Patent for any claim other than Claim 6.  Sprint is contemporaneously filing a Motion for

28   Summary Judgment clearly illustrating that Sprint cannot infringe Claim 6 of the '797 Patent.

- 1 -

All of the claims 2-Way asserts against Sprint were substantively changed during the reexamination of the '797 Patent, except for claim 6.[2]  With respect to the accused PTT functionality of the accused products, the core technology has remained the same since well before the issuance of the re-examination certificate.  2-Way's own expert confirmed as much by relying upon one iDEN and one QChat phone as representative phones for his alleged infringement analysis for all of the accused products, regardless of date of launch relative to the re-examination certificate.  Therefore, 2-Way should be barred from recovering any damages from Sprint under asserted claims 1, 3-5, 17-18, or 20-32, as all of the accused products either (i) existed or (ii) are identical to products that existed before the claims of the '797 Patent were modified during re-examination.

## II.   **UNDISPUTED MATERIAL FACTS**

The following facts are undisputed.

### A.   **The '797 Patent and the Asserted Claims**

The '797 Patent issued on July 18, 1995.[3]  The initial '797 Patent included 20 claims.  On October 25, 2005, 2-Way filed a reexamination request for the '797 Patent.[4]  The USPTO issued a reexamination certificate for the '797 Patent on September 2, 2008.[5]  The '797 Patent expired on July 18, 2012.

During the reexamination, 2-Way amended all of the claims, including asserted claims 1, 3-5, 17-18, and 20, as a result of the prior art at issue in the re-examination.[6]  Also during the reexamination, 2-Way added claims 21-32.[7]  Claim 6 was also amended during the reexamination by changing it from a dependent claim to an independent claim.  However, for purposes of this motion, Sprint does not argue that the amendments to claim 6 were "substantive changes" since the

---

[2] As detailed in Sprint's concurrently filed Motion for Summary Judgment of Non-Infringement, none of the accused products infringe claim 6 (or any of the asserted claims).

[3] '797 Patent, Ex. A to Am. Compl., Dkt. 56.  *See also* Declaration of Matthew M. Lubozynski in Support of Defendants' Motion for Summary Judgment of the Applicability of Intervening Rights (Nov. 15, 2013) ("Lubozynski Decl."), Ex. 1.

[4] Reexamination Certificate, Ex. B to Am. Compl., Dkt. 56.  *See also* Lubozynski Decl., Ex. 2.

[5] *See id.*

[6] *See id.*

[7] *See id.*

- 2 -

amendment combined previous independent claim 1 and dependent claim 6 into new independent claim 6.[8]  Sprint's motion on intervening rights thus is limited to asserted claims 1, 3-5, 17-18, and 20-32.

On January 5, 2011, 2-Way filed its initial Complaint against Sprint asserting infringement of the '797 Patent.  It subsequently filed an Amended Complaint on October 7, 2011.  Dkt. 56.  Currently, based on 2-Way's technical and damages expert reports, 2-Way accuses 85 Sprint phones with Push-to-Talk ("PTT") capability of infringing claims 1, 3-6, 17-18, 20-32 of the '797 Patent (the "asserted claims").[9]  These PTT phones are broken down into two general types, iDEN and QChat, based on the network and technology they utilize.  Sprint has used the iDEN network since the early 1990s for PTT phones, and it debuted the use of QChat in 2008.

**B.**     **Sprint's Sale and Use of PTT Phones on the iDEN Network**

The majority (77 out of 85) of accused products operated PTT on Sprint's now-decommissioned iDEN network.  This network was developed in the early 1990s to provide Push-to-Talk ("PTT"), phone, and data services in one mobile device.[10]  In fact, since at least the early 1990s, Sprint or its predecessors have sold mobile devices with PTT capability, and provided PTT services in conjunction with such devices.[11]  In November 1991, Motorola, Inc. ("Motorola") and Fleet Call, Inc., which later became Sprint's predecessor Nextel Communications, Inc. ("Nextel"),[12] entered into an Enhanced Specialized Mobile Radio System Equipment Purchase Agreement and a Letter Agreement for the sale and use of "mobile devices," with "dispatch," aka

---

[8] *See* Reexamination Certificate, Ex. B to Am. Compl., Dkt. 56.  *See also* Lubozynski Decl., Ex. 2.

[9] Lubozynski Decl., Ex. 3, Opening Expert Report of Wayne E. Stark, Ph.D., at ¶33 (Aug. 15, 2013) ("Stark Report").

[10] *See* Lubozynski Decl., Ex. 4 at SPRINT00145770 ("Nextel provides an integrated product that consists of dispatch, short messaging, wireless data, and cellular telephone interconnect.").  *See also, e.g.,* Lubozynski Decl., Ex. 8.  Lubozynski Decl., Ex. 17 January 18, 2012 Deposition of John Tudhope 119:4-16 ("Tudhope Dep.").

[11] *See* Lubozynski Decl., Ex. 22, Defs. Suppl. Resp. Pl. Interrogs. Nos. 1, 2, 6, 7, 8 at 7-8.  Prior to August 2005, these products were sold by Nextel Communications, Inc., which was merged into Sprint in August 2005.

[12] Lubozynski Decl., Ex. 5,_ March 14, 2012 Deposition of Bruce Drawert 218:2-11 ("Drawert Dep.").

- 3 -

PTT, capabilities, on the precursor to the iDEN network.[13]   Nextel began purchasing mobile devices from Motorola with PTT capabilities shortly thereafter.  In September 1996, Nextel began providing wireless services to the nation through mobile devices that operated with Motorola's proprietary iDEN technology.[14]  Before September 1996, and at least as early as 1993, before the initial issuance of the '797 Patent, Nextel was selling and/or providing Motorola-provided mobile devices with PTT capabilities for use on the precursor to the iDEN network in at least Los Angeles, as well as in other parts of California.[15]

Sprint, after acquiring Nextel in August 2005, continued to purchase iDEN-enabled phones with PTT capabilities over the years.  Sprint sold iDEN-enabled phones with PTT capabilities nationwide from at least late 1996 or 1997 until June 30, 2013 when Sprint decommissioned the iDEN network.[16]  The core PTT functionality on the iDEN phones did not change during this timeframe.[17]  Even prior to the issuance of the reexamination certificate for the '797 Patent on September 2, 2008, Sprint had spent billions of dollars on the iDEN network and on purchasing phones from Motorola and other equipment providers for use on the iDEN network.[18] Additionally, in 2007 and 2008, Sprint invested in a "reinvigoration" of PTT and the iDEN network and paid a significant amount of money in marketing and advertising related to PTT during this time alone.[19]

[13] *See, e.g.*, Lubozynski Decl., Ex. 6; Lubozynski Decl., Ex. 7.  *See also* Lubozynski Decl., Ex. 22, Defs. Suppl. Resp. Pl. Interrogs. Nos. 1, 2, 6, 7, 8 at 7-8.  *Cf.* Drawert Dep. 218:2-220:4.

[14] *See* Lubozynski Decl., Ex. 8.  Tudhope Dep. 119:4-16.  *See also* Lubozynski Decl., Ex. 22, Defs. Suppl. Resp. Pl. Interrogs. Nos. 1, 2, 6, 7, 8 at 7-8.  *See generally*, Drawert Dep. 218:2-220:4; Lubozynski Decl., Ex. 13 January 25, 2012 Deposition of Deborah Nowatski 40:11-41:25.

[15] *See* Lubozynski Decl., Ex. 6.  *See also* Lubozynski Decl., Ex. 22, Defs. Suppl. Resp. Pl. Interrogs. Nos. 1, 2, 6, 7, 8 at 7-8.  *See generally*, Drawert Dep. 218:2-220:4; Tudhope Dep. 128:19-22.

[16] *See, e.g.*, Lubozynski Decl., Ex. 4 at SPRINT00145770; Lubozynski Decl., Ex. 9; Lubozynski Decl., Ex. 10; Lubozynski Decl., Ex. 8.  *See also* Lubozynski Decl., Ex. 22, Defs. Suppl. Resp. Pl. Interrogs. Nos. 1, 2, 6, 7, 8 at 7-8.  *See generally*, Nowatski Dep. 40:11-41:25.

[17] Lubozynski Decl., Ex. 11 Initial Expert Report of Anthony Acampora at 182-183 (Aug. 15, 2013) ("Acampora Initial Rep."); Lubozynski Decl., Ex. 12 February 7, 2012 Deposition of David Heeschen 77:5-9 ("Heeschen Dep."); Nowatski Dep. 31:2-32:14; Lubozynski Decl., Ex. 14 March 1, 2012 Deposition of Kelley Russell 142:8-143:12 ("Russell Dep."); Drawert Dep. 217:19-218:1.

[18] *See, e.g.,* Lubozynski Decl., Ex. 15; Tudhope Dep. 159:7-160:2.

[19] Lubozynski Decl., Ex. 16 Def. Sprint Solutions, Inc. Resp. Pl.'s 4th Interrogs. at 13-14 (Mar. 15, 2012).

### C.    Sprint's Sale and Use of PTT Phones on Its CDMA Network (QChat)

By June 2008, Sprint began using PTT on its "CDMA" cellular network, as opposed to the proprietary iDEN network, through the use of QChat technology.[20]  Sprint spent millions of dollars on developing the ability to use QChat for PTT on its CDMA network, as well as in purchasing mobile devices for use on that network even prior to the issuance of the '797 Patent's reexamination certificate in September 2008.[21]  In conjunction with this launch in 2008, Sprint introduced mobile devices that 2-Way accuses of infringement here, including phones made by Samsung, LG, and Sanyo.  Additionally, at or just prior to the issuance of the '797 Patent's reexamination certificate, Sprint introduced a PTT phone on the CDMA network manufactured by Motorola now accused of infringement – the Renegade V950.  However, the devices and PTT services on the CDMA network in this 2008 timeframe were not successful.[22]

Sprint subsequently issued additional phones that used PTT over its CDMA network by utilizing QChat technology in October 2011, and dubbed the service "Sprint Direct Connect" to differentiate from its PTT offering over the iDEN network.[23]   Sprint introduced phones manufactured by Kyocera in conjunction with this launch that 2-Way accuses of infringement.[24]  The core QChat functionality utilized in this reissuance for the use of PTT was not altered since Sprint's initial QChat PTT offering in June 2008, which is prior to the reissuance of the '797 Patent.[25]

### D.    The Accused Products are Accused of Infringing Claims 1, 3-6, 17-18, 20-32

2-Way currently accuses 85 products sold by Sprint of infringing claims 1, 3-6, 17-18, and 20-32 of the '797 Patent.[26]  At least 64 of those accused products, all of which utilize either iDEN

---

[20]  Tudhope Dep. 103:14-17; Lubozynski Decl., Ex. 18 March 8, 2012 Deposition of Sandeep Mistry 48:6-9 ("Mistry Dep."); Lubozynski Decl., Ex. 19 May 10, 2012 Deposition of Trinh Vu 32:7-19 ("Vu Dep.").

[21] *See, e.g.*, Lubozynski Decl., Ex. 15.  *See also* Tudhope Dep. 159:7-160:2.

[22] Tudhope Dep. 103:12-19; Lubozynski Decl., Ex. 15.

[23] Lubozynski Decl., Ex. 20; Tudhope Dep. 26:22-28:2; Mistry Dep. 48:2-5.

[24] *Id.*

[25] Vu Dep. 48:1-7.

[26] Stark Report at ¶33.

or QChat technology for PTT, were launched on or before the date of issuance of the reexamination certificate for the '797 Patent.[27]   Some of these 64 phones initially sold before September 2008 continued to be sold after the September 2008 issuance of the reexamination certificate of the '797 Patent.[28]

The remaining 21 of the 85 accused products were launched after the re-examination of the '797 Patent concluded.[29]

However, all 85 Accused Products use PTT either through iDEN or QChat, and the core PTT functionality through either technology has not changed since prior to the issuance of the reexamination certificate.[30]

III.   **LEGAL ARGUMENT**

A.   **The Doctrine of Intervening Rights**

The doctrine of intervening rights is codified in 35 U.S.C. §§ 252 and 307.   Absolute intervening rights "abrogate liability for infringing claims added to or modified from the original patent if the accused products were made or used before the [reexamination]." *Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1362 (Fed. Cir. 2012); *see also* 35 U.S.C. § 307. Equitable intervening rights also "apply as a matter of judicial discretion to mitigate liability for infringing such claims even as to products made or used ***after*** the [reexamination] if the accused infringer made substantial preparations for the infringing activities prior to reissue."   *Id.* (emphasis added).   Here, both absolute and equitable intervening rights abrogate all liability for any alleged infringement by Sprint of claims 1, 3-5, 17-18, and 20-32.

---

[27] A chart identifying these 64 devices is attached as Ex. A.

[28] *See, e.g.*, Lubozynski Decl., Ex. 21 Def. Sprint Solutions, Inc.'s Fourth Suppl. Resp. Pl.'s Interrog. No. 7 (Mar. 2, 2012).

[29] A chart identifying these 21 devices is attached as Ex. A.

[30] Acampora Initial Rep. at 182-183; Heeschen Dep. 77:5-9; Nowatski Dep. 31:2-32:14; Russell Dep. 142:8-143:12; Drawert Dep. 217:19-218:1; Vu Dep. 48:1-7.

US2008 5114713 1

### B.    All Asserted Claims Except Claim 6 Were Amended or Added During the Reexamination

"[T]he first question when assessing whether intervening rights arose from a reexamination is whether the asserted claim is 'amended or new'[.]"  *Marine Polymer*, 672 F.3d at 1363.  On September 2, 2008, the United States Patent Office issued the reexamination certificate for the '797 Patent.  All of the claims presently asserted by 2-Way against Sprint "were added to or modified from the original patent" during reexamination, with the exception of asserted claim 6.  Thus, only claim 6 of the '797 has the potential to prevent intervening rights from eliminating all of Sprint's potential liability in this case.  *See, e.g., Adrain v. Vigilant Video, Inc*., No. 2:10-cv-173-JRG, 2013 WL 1984369, at *3 (E.D. Tex. May 13, 2013) (finding that intervening rights did not apply to claim 6 of the patent-in-suit in that case as it was not amended or new through reexamination but intervening rights did apply to the remaining asserted claims).[31]

It is unquestioned that all of the remaining asserted claims, claims 1, 3-5, 17-18, 20-32, were amended or added during the reexamination.  Dr. Stark, 2-Way's technical expert, admitted in his opening expert report that asserted claims 1, 3-5, 17-18, and 20 were amended during the reexamination and asserted claims 21-32 were added during the reexamination.[32]  Further, Sprint's technical expert, Anthony Acampora, Ph.D., opined that claims 1, 3-5, 17-18, 20-32 were substantively changed or added during the Reexamination of the '797 Patent.[33]  2-Way's expert, Dr. Stark, provided **no opinions** as to intervening rights, including whether any of the claims were "substantively changed" during the re-examination, and thus it is undisputed that claims 1, 3-5, 17-18, and 20-32 were either added or substantively changed during the re-examination, thus triggering

---

[31] Sprint is contemporaneously filing a Motion for Summary Judgment of Non-infringement with respect to claim 6 as, among other reasons, claim 6 requires an "arbitration field which contains data which reflects an arbitration value" and nothing in the information sent or received from the accused products during a PTT call can reasonably be described as an "arbitration field which contains data which reflects an arbitration value."  Therefore, Sprint cannot infringe claim 6.

[32] Stark Report at ¶24.

[33] Acampora Initial Rep. at 182-183.

- 7 -

the applicability of the doctrine of intervening rights for those claims.[34]  The evidence below further illustrates that this is the case.

> **C.     All Asserted Claims that were Amended or Added Were "Substantively Changed"**

In order for the doctrine of intervening rights to apply, the claims at issue must not be "substantially identical" to the prior claim.  *See* 35 U.S.C. §§ 252, 307(b).  *See, e.g., Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346 (Fed. Cir. 1998).  "Reexamined claims are 'identical' to their original counterparts if they are without substantive change."  *Laitram*, 163 F.3d at 1346-47 (citation omitted).  "[T]he Federal Circuit has remarked that 'it is difficult to conceive of many situations in which the scope of a rejected claim that became allowable when amended is not substantively changed by the amendment....'"  *Ohio Willow Wood Co. v. Alps South, LLC*, No. 2:05-CV-1039, 2012 WL 4322541, at *10-11 (S.D. Ohio Sept. 20, 2012) (*quoting Laitram,* 163 F.3d at 1348).

The amendments and additions to the asserted claims are reflected in the *Ex Parte* Reexamination Certificate for the '797 Patent, through italics (additions) and brackets (deletions).[35] A mere cursory review of such amendments and additions confirm that such amendments and additions to the asserted claims, and particularly amended independent claims 1 and 17 and newly added claims 20-32 were "substantive changes" so as to permit the application of the doctrine of intervening rights.  Specifically, independent claim 1 was amended to add the following claim *element* to overcome the prior art at issue in the re-examination: "a user interface that displays on a screen information relating to the other application programs that are actively executing and information to control the audio communication system."[36]   As 2-Way added this entire claim element, claim 1 is not "identical" to the prior claim.  2-Way thus altered (narrowed) the scope of

---

[34] Lubozynski Decl., Ex. 25, October 8, 2013 Deposition of Wayne E. Stark, Ph.D. at 163:21-25 ("Stark Dep.").

[35] Reexamination Certificate, Ex. B to Am. Compl., Dkt. 56.  Lubozynski Decl., Ex. 2.

[36] Reexamination Certificate, Ex. B to Am. Compl.; Dkt. 56, *see also* Lubozynski Decl., Ex. 2; Lubozynski Decl., Ex. 24, Resp. Final Office Action at 2, 10, 12 (Dec. 17, 2007); Lubozynski Decl., Ex. 25, Notice of Intent to Issue Ex Parte Reexam. Cert. at 5-6.

claim 1, as well as asserted claims 3-5 and 21-29 which depend from claim 1.[37]   Therefore, this is a substantive change permitting the application of intervening rights.  *See Laitram*, 163 F.3d at 1346.

During reexamination, independent claim 17 was amended in a number of ways.  First, the following language was added to a pre-existing claim element: "that transmits and receives digitized audio data packets over a wireless network."[38]   Claim 17 was further amended to add the same claim element as added to claim 1 mentioned above.[39]   Further, the term "mass" was added to describe the previously claimed "data storage system," and claim 17 was also modified to state that "the other application programs are actively executing on the computer station controller on the computer station."[40]   As these additions and modifications make clear, claim 17 is not "identical" to the prior claim, and its scope was clearly altered.[41]   Likewise, asserted claims 18-20, which depend from claim 17, were "substantively changed."[42]   Therefore, this is a substantive change permitting the application of intervening rights.  *Laitram*, 163 F.3d at 1346.

Finally, asserted claims 21-29, which depend from claim 1 as described above, and claims 30-32 were all added during the reexamination of the '797 Patent.

As a result, all of these asserted claims except claim 6 were "substantively changed" during reexamination, thus clearly permitting the application of intervening rights.

---

[37] *See* Acampora Initial Rep. at 182.  As 2-Way's expert did not provide any opinions concerning intervening rights, *see* Stark Dep. 163:21-25, this is undisputed.

[38] Reexamination Certificate, Ex. B to Am. Compl.; Dkt. 56, *see also* Lubozynski Decl., Ex. 2; Lubozynski Decl., Ex. 24, Resp. Final Office Action at 4, 10, 15 (Dec. 17, 2007).

[39] *Id*.  Lubozynski Decl., Ex. 25, Notice of Intent to Issue Ex Parte Reexam. Cert. at 5-6.

[40] Reexamination Certificate, Ex. B to Am. Compl., Dkt. 56, *see also* Lubozynski Decl., Ex. 2; Lubozynski Decl., Ex. 26, Resp. Office Action at 3-4, 17-18 (Aug. 21, 2006).  Lubozynski Decl., Ex. 24, Resp. Final Office Action at 4, 10, 15 (Dec. 17, 2007).

[41] *See* Acampora Initial Rep. at 182.  As 2-Way's expert did not provide any opinions concerning intervening rights, *see* Stark Dep. 163:21-25, this is undisputed.

[42] *Id*.

### D.      Absolute Intervening Rights

Absolute intervening rights is codified in the first sentence of the second paragraph of 35 U.S.C. § 252.[43]  In relevant part it states

> A reissued patent shall not abridge or affect the right of any person or that person's successors in business who, prior to the grant of a reissue, made, purchased, offered to sell, or used within the United States, or imported into the United States, anything patented by the reissued patent, to continue the use of, to offer to sell, or to sell to others to be used, offered for sale, or sold, the specific thing so made, purchased, offered for sale, used, or imported unless the making, using, offering for sale, or selling of such thing infringes a valid claim of the reissued patent which was in the original patent.

35 U.S.C. § 252.  Absolute intervening rights thereby "abrogate[s] liability for infringing claims added to or modified from the original patent if the accused products were made or used before the reissue."  *Marine Polymer*, 672 F.3d at 1362.  *See also BIC Leisure*, 1 F.3d at 1220-21 ("This sentence provides an accused infringer with the absolute right to use or sell a product that was made, used, or purchased before the grant of the [reexamined] patent as long as this activity does not infringe a claim of the [reexamined] patent that was in the original patent.").   Absolute intervening rights, however, only "covers products already made at the time of" the issuance of the reexamination certificate.  *BIC Leisure*, 1 F.3d at 1221.

2-Way has accused 64 different products of infringing that indisputably were launched to the public on or before the September 2, 2008 reissue date.   Therefore, it is clear that absolute intervening rights applies to all units of these 64 devices that were manufactured by the time of the issuance of the reexamination certificate, and serves to abrogate any alleged infringement liability for the sale of such devices under claims 1, 3-5, 17-18, and 20-32.  Indeed, "[t]his right is absolute."  *See BIC Leisure*, 1 F.3d at 1221.  Sprint thus is entitled to summary judgment as to 2-Way's claims 1, 3-5, 17-18, and 20-32 for all units of the 64 accused products that were made before September 2, 2008.

---

[43]  Although 35 U.S.C. § 252 concerns reissued patents, these provisions apply to reexamined patents.  *See Marine Polymer*, 672 F.3d at 1362 ("Although intervening rights originated as a defense against patents modified through reissue procedures, the doctrine has since been extended to the context of patent reexamination."); *see also* 35 U.S.C. § 307 (b).

- 10 -

### E.      Equitable Intervening Rights

Equitable intervening rights is codified in the second sentence of the second paragraph of 35

U.S.C. § 252.  In relevant part it states

> The court before which such matter is in question may provide for the continued
> manufacture, use, offer for sale, or sale of the thing made, purchased, offered for
> sale, used, or imported as specified, or for the manufacture, use, offer for sale, or sale
> in the United States of which substantial preparation was made before the grant of
> the reissue, and the court may also provide for the continued practice of any process
> patented by the reissue that is practiced, or for the practice of which substantial
> preparation was made, before the grant of the reissue, to the extent and under such
> terms as the court deems equitable for the protection of investments made or
> business commenced before the grant of the reissue.

35 U.S.C. § 252.  Equitable intervening rights thus "permits the continued manufacture, use, or sale

of additional products covered by the reissue patent when the defendant made, purchased, or used

identical products, or made substantial preparations to make, use, or sell identical products, before

the reissue date."  *BIC Leisure*, 1 F.3d at 1221; *see also Shockley v. Arcan, Inc.*, 248 F.3d 1349,

1360 (Fed. Cir. 2001) ("[E]quitable intervening rights . . . explicitly extend protections for

continued manufacture, thus extending protection to articles not yet in existence at the time of the

reissue.").

However, the Federal Circuit has recognized that "[t]his equitable right is not absolute."

*BIC Leisure*, 1 F.3d at 1221.  Instead, "[t]he court ... *may* provide for the continued manufacture,

use or sale ... *to the extent and under such terms as the court deems equitable* for the protection of

investments made or business commenced...."   *Id.*   (quoting 35 U.S.C. § 252) (emphasis in

original).  Therefore, this Court, as permitted by equity, can "protect investments [by Sprint] made

before reissue" of the '797 Patent following conclusion of the re-examination.  *Id.*  Here, before the

September 2008 issuance of the reexamination certificate of the '797 Patent, Sprint had made

considerable investments in the PTT devices and the networks required for their use such that it

would be equitable to protect such investments by shielding Sprint from liability for products made

pursuant to those investments.

- 11 -

US2008 5114713 1

1.  Post-September 2, 2008 Manufacture of Products First Made Prior to September 2, 2008

It cannot be questioned that, as to the 64 accused phone models[44] that were launched prior to the issuance of the reexamination certificate, units of those same phone models manufactured after that date are "identical" to the phones that were manufactured and sold before September 2, 2008. Thus, there can be no dispute that "substantial preparations" had been made for their use, purchase, or manufacture after September 2008. Furthermore, it is undisputed that Sprint had made the required investment in bringing those phones to the market for use on the networks that enabled the accused functionality, since those phones had already been made and sold before September 2, 2008. Therefore, equitable intervening rights applies to any post-September 2008 units of the same 64 accused product models that were first sold before September 2, 2008. *See BIC Leisure*, 1 F.3d at 1221. *See also* 35 U.S.C. § 307(b); 35 U.S.C. § 252.

2.  Products First Made After September 2, 2008

Equitable intervening rights applies to the 21 accused product models that were launched after September 2, 2008 because they were "identical" with respect to the accused functionality as the 64 accused product models first made prior to September 2, 2008, and because "substantial preparations" were made for their launch before then. As described above, the accused PTT functionality used in the accused products first made after September 2, 2008 is identical to the devices launched prior to September 2, 2008 with respect to 2-Way's infringement claims. Indeed, it is undisputed that the accused PTT functionality on the iDEN network has not changed since being introduced in the mid-to-late 1990s.[45] Likewise, PTT using QChat similarly has not changed since its introduction in 2007.[46]

---

[44] The Motorola Renegade V950 launched, at the latest, on the same date as the issuance of the reexamination certificate for the '797 Patent. *See* Lubozynski Decl., Ex. 28. As the Renegade was available on September 2, 2008, it is clear it was made prior to that date. *See, e.g., id*. at 2-WAY0010907 ("Sprint . . . today announced availability of its latest Nextel Direct Connect phone – the Motorola Renegade V950.").

[45] Acampora Initial Rep. at 182-183; Heeschen Dep. 77:5-9; Nowatski Dep. 31:2-32:14; Russell Dep. 142:8-143:12; Drawert Dep. 217:19-218:1.

[46] Vu Dep. 48:1-7.

- 12 -

2-Way's own "technical" expert, Dr. Stark, utilized in his infringement analysis the Motorola i365 phone as a "representative" device for all iDEN accused products, and the Motorola Renegade V950 phone as a "representative" device for all QChat devices.[47]   These "representative" devices were both launched on (the V950) and after (the i365) September 2, 2008, yet Dr. Stark made no distinction between the functionality for the products first sold on either side of that line.  Furthermore, Dr. Stark admitted that his analysis for **all** of the accused products, regardless of date of first sale, was the same as all other devices and that there was no need to "separately go through each of the claim charts" he provided to his report for the individual products.[48]   Thus, 2-Way's own expert's analysis illustrates that these products are "identical" such that equitable intervening rights should apply.

Furthermore, Sprint made "substantial preparations" to make and use the accused products that launched after the issuance of the reexamination certificate for the '797 Patent.  In fact, earlier in 2008, Sprint publicly "reaffirmed" its commitment to PTT and stated that it "was strengthening" its Nextel Direct Connect service, had debuted new PTT phones with additional new PTT phones coming out, expanded PTT to its CDMA network through QChat, and had invested billions of dollars in the iDEN network.[49]   This Court should protect the substantial investments made by Sprint in such products and the networks.  This is true, especially in light of the fact that 2-Way waited until January 2011, more than 2 years after the issuance of the reexamination certificate, to file suit against Sprint who had been providing PTT on multi-functional devices since the initial issuance of the '797 Patent in 1996.

Furthermore, as this is an equitable determination, whether Sprint's alleged infringement was willful or in bad faith can be a consideration.  However, there is no evidence that Sprint's alleged infringement was willful or in bad faith.  Indeed, 2-Way does not even allege that Sprint's infringement was willful.[50]   It cannot do so because Sprint had no knowledge of the '797 Patent

---

[47] Stark Report ¶¶102, 277.

[48] Stark Dep. 29:7-31:2.

[49] *See* Lubozynski Decl., Ex. 15;  Lubozynski Decl., Ex. 29.  Tudhope Dep. 159:7-160:2.

[50] Lubozynski Decl., Ex. 27, 2-Way Computing Inc.'s Resp. Def.'s First Set of Interrogs. at 18 (Apr. 25, 2011) ("2-Way has not alleged willful infringement.").

until 2-Way brought suit in January 2011 – over 2 years after the issuance of the reexamination certificate, 15 years after the '797 Patent initially issued, and with only a year and a half of life left on the '797 Patent.  By that time, as mentioned above, Sprint had already invested billions of dollars in the networks necessary for the use of PTT on the accused products, as well as a substantial amount on the sale and marketing of the accused products themselves.

As a result, *equitable* intervening rights bars any claims of infringement of the '797 Patent under claims 1, 3-5, 17-18, and 20-32 for the remaining 21 accused product models launched after September 2008, as they were of a type produced, or as to which at least "substantial preparations" had been made for manufacture, before September 2008.  *See BIC Leisure*, 1 F.3d at 1220 (Fed. Cir. 1993); 35 U.S.C. §§ 252 and 307.

In sum, it is undisputed that absolute intervening rights bars 2-Way's assertion of claims 1, 3-5, 17-18, and 20-32 against 64 of the 85 accused product models made before September 2, 2008, and that equitable intervening rights bars 2-Way's claims against those same 64 models made after September 2, 2008, as well as the 21 accused product models first made after September 2, 2008.

**IV.     IV.     CONCLUSION**

For the reasons discussed above, Sprint respectfully requests that the Court enter summary judgment for Sprint on 2-Way's claims of infringement of the '797 Patent for asserted claims 1, 3-5, 17-18, 20-32 of the '797 Patent due to absolute and equitable intervening rights.

- 14 -

Dated: November 15, 2013

Respectfully submitted,

**KILPATRICK TOWNSEND & STOCKTON LLP**

*s/Matthew M. Lubozynski*
Matthew M. Lubozynski (*Pro Hac Vice*)
mlubozynski@kilpatricktownsend.com
William H. Boice (*Pro Hac Vice*)
bboice@kilpatricktownsend.com
Steven D. Moore (*Pro Hac Vice*)
smoore@kilpatricktownsend.com
Kristopher L. Reed (*Pro Hac Vice*)
kreed@kilpatricktownsend.com
Christopher Schenck (*Pro Hac Vice*)
cschenck@kilpatricktownsend.com
1100 Peachtree Street, Suite 2800
Atlanta, GA  30309-4528
Tel:     (404) 815-6500
Fax:     (404) 815-6555

**SNELL & WILMER LLP**

Greg Brower (Nevada Bar No. 5232)
gbrower@swlaw.com
Brian Reeve (Nevada Bar No. 10197)
breeve@swlaw.com
3883 Howard Hughes Parkway
Suite 1100
Las Vegas, Nevada 89169
Tel:     (702) 784-5200
Fax:     (702) 784-5252

***Attorneys for Defendants***
*Sprint Solutions, Inc., Nextel Finance Company, Sprint United Management Company, Nextel of California, Inc., Nextel Boost of California, LLC, and Nextel Communications, Inc.*

- 15 -

US2008 5114713 1

**CERTIFICATE OF SERVICE**

I, the undersigned, declare under penalty of perjury, that I am over the age of eighteen (18) years. On this date, I caused to be served a true and correct copy of the foregoing **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF THE APPLICABILITY OF INTERVENING RIGHTS TO BAR DAMAGES AS TO ASSERTED '797 PATENT CLAIMS 1, 3-5, 17-18, AND 20-32** by the method indicated:

|  |  |
|---|---|
| ___XXX___ | by the Court's CM/ECF Program |
| _____ | by U. S. Mail |
| _____ | by Facsimile Transmission |
| _____ | by Electronic Mail |
| _____ | by Federal Express |
| _____ | by Hand Delivery |

Mark Borghese, Esq.
BORGHESE LEGAL, LTD.
10161 Park Run Drive, Suite 150
Las Vegas, NV 89145
Phone: (702) 382-4804
Fax: (702) 382-4805
Email: mark@borgheselegal.com

***Attorneys for Plaintiff***

Paul A. Stewart, Esq.
Irfan A. Lateef, Esq.
Cheryl T. Burgess, Esq.
KNOBBE MARTENS OLSON
   & BEAR LLP
2040 Main St, 14th Floor
Irvine, CA 92614
Email: paul.stewart@kmob.com
Email: ilateef@kmob.com
Email: cheryl.burgess@kmob.com

***Attorneys for Plaintiff***

DATED: November 15, 2013

*s/Matthew M. Lubozynski*
Matthew M. Lubozynski

- 16 -