**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| 2-WAY COMPUTING, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>SPRINT NEXTEL CORPORATION<br>and SPRINT SOLUTIONS, INC.,<br><br>    Defendants. | 2:11-CV-12 JCM (PAL) |

**ORDER**

Presently before the court is defendant Sprint Solutions, Inc.'s ("Sprint") motion for summary judgment on the applicability of intervening rights to bar damages asserted for alleged patent violations. (Doc. # 134). Plaintiff 2-Way Computing, Inc. ("2-Way") has filed an opposition (doc. # 143), to which defendant has replied (doc # 152).

**I.    Background**

This motion arises from an action brought by 2-Way for patent infringement. 2-Way accuses Sprint of infringing U.S. Patent No. 5,434,797 entitled "Audio Communication System for a Computer and Network" ("the '797 patent"). 2-Way describes the patent as disclosing an audio communication system that allows the user to talk with other users over a shared network, rather than having to rely on traditional telephone lines.

The user can use a computer to place a call and continue to work on other applications and perform other tasks while the audio communication system is operating, and does not need to use a standard telephone. 2-Way accuses Sprint of infringing 23 of the 32 claims of the '797 patent by

**James C. Mahan**
**U.S. District Judge**

making, using, selling, importing and/or offering to sell audio communication products and/or services, including mobile devices that support "Push-To-Talk" or "Direct Connect" communications.

The '797 patent was initially issued on July 18, 1995. On October 25, 2005, 2-Way filed for a reexamination request for the patent. During the reexamination, 2-Way amended and added claims to the '797 patent. A patent reexamination certificate was issued on September 2, 2008.

2-Way asserts that Sprint has infringed amended claims 1, 3-6, 17-18, and 20-32 of the '797 patent. In a separate order, the court granted in part and denied in part Sprint's motion for summary judgment. (Doc. # 160). In the instant motion Sprint contends that, if it is found to have infringed 2-Way's patent, any damages should be limited through the doctrine of intervening rights.

## II. Discussion

### A. Standard of Review

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to

make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

**B. Analysis**

*1. Absolute Intervening Rights*

The doctrine of intervening rights limits a patent owner's right to recover damages for patent claims added or modified during a patent reexamination proceeding in two situations. If a patent claim is added or "substantively changed" as a result of patent reexamination, the patent owner is barred from recovering damages for infringement of the new or modified claims by any product that existed before the conclusion of the reexamination. *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1220 (Fed. Cir. 1993). Except for claim 6, all of the claims that 2-Way believes Sprint infringed were substantively changed or added during the reexamination process. Claim 6 will not be impacted by intervening rights.

. . .

**James C. Mahan**
**U.S. District Judge**

- 3 -

Absolute intervening rights are derived from 35 U.S.C. § 252. In relevant part it states:

> A reissued patent shall not abridge or affect the right of any person or that person's successors in business who, prior to the grant of a reissue, made, purchased, offered to sell, or used within the United States, or imported into the United States, anything patented by the reissued patent, to continue the use of, to offer to sell, or to sell to others to be used, offered for sale, or sold, the specific thing so made, purchased, offered for sale, used, or imported unless the making, using, offering for sale, or selling of such thing infringes a valid claim of the reissued patent which was in the original patent.

35 U.S.C. § 252.

In other words, 35 U.S.C. § 252 "provides an accused infringer with the absolute right to use or sell a product that was made, used, or purchased before the grant of the [reexamined] patent as long as this activity does not infringe a claim of the [reexamined] patent that was in the original patent." *Bic Leisure Prods.*, 1 F.3d at 1221. Absolute intervening rights cover only products already made at the time of the issuance of the reexamination certificate. *Id.*

Both Sprint and 2-Way agree that Sprint is entitled to absolute intervening rights as to the phones that were physically in existence or on order at the time the patent reexamination certificate was issued on September 2, 2008. 2-Way, however, argues that Sprint has failed to identify the number of units of the phones that it had in inventory or on order before September 2, 2008. 2-Way contends that a claim of absolute interfering rights is an affirmative defense, and that Sprint is required to provide this evidence at this stage of the proceedings.

While 2-Way is correct that absolute intervening rights is an affirmative defense, 2-Way fails to cite to any authority supporting its conclusion that the defense somehow fails because Sprint did not specify an exact number of phones that may be covered by absolute intervening rights. 2-Way cites only to cases that explain that the defendant bears the burden of proof on affirmative defenses. In this case, Sprint has successfully demonstrated that actual units of 64 of the phones that are alleged to infringe 2-Way's patent were produced or on order prior to September 2, 2008. Sprint has absolute intervening rights for these products, and 2-Way may not recover damages for any alleged acts of infringement on or before September 2, 2008. Determination of the number of phones that existed or were on order before September 2, 2008, may occur at a later stage of the proceedings.

James C. Mahan
U.S. District Judge

...
...

*2. Equitable Intervening Rights*

Equitable intervening rights are also derived from 35 U.S.C. § 252. In relevant part it states:

> The court before which such matter is in question may provide for the continued manufacture, use, offer for sale, or sale of the thing made, purchased, offered for sale, or sale in the United States of which substantial preparation was made before the grant of the reissue, and the court may also provide for the continued practice of any process patented by the reissue that is practiced, or for the practice of which substantial preparation was made, before the grant of the reissue, to the extent and under such terms as the court deems equitable for the protection of investments made or business commenced before the grant of the reissue.

35 U.S.C. § 252.

In other words, 35 U.S.C. § 252 "permits the continued manufacture, use, or sale of additional products covered by the reissue patent when the defendant made, purchased, or used identical products, or made substantial preparations to make, use or sell identical products, before the reissue date." *Bic Leisure Prods.*, 1 F.3d at 1221. This right, however, is not absolute. "The court . . . may provide for the continued manufacture, use or sale . . . to the extent . . . the court deems equitable for the protection of investments made or business commenced." *Id.*

Sprint argues that it made major investments in the accused devices and the network that allowed the phones to function prior to 2008. Sprint claims that equity requires protection of investments by shielding Sprint from liability for products made after those investments.

Sprint contends that any new manufacturing of phones that had been introduced prior to September 2, 2008, should be covered by the doctrine of equitable intervening rights. Sprint argues that substantial preparations had clearly been made for these phones as the phones had already been developed and brought to market before the issuance of the reexamination certificate.

In response, 2-Way argues that equitable intervening rights is inappropriate for several reasons. First, 2-Way argues that equitable intervening rights exist to protect those who rely on an original patent and find that their products infringe the patent after the reexamination process. 2-Way claims that Sprint did not know that the '797 patent existed in the first place, and thus, Sprint did not rely on it.

1    The Supreme Court has held that it is not necessary to have knowledge of an original patent
2 in order to raise a defense of equitable intervening rights. *Sontag Chain Stores Co. v. National Nut*
3 *Co.*, 310 U.S. 281, 295 (1940). Constructive notice of patents goes to all the world, and because of
4 this, a defendant may operate with implied knowledge and claim whatever privilege would follow
5 actual knowledge. *Id.* 2-Way's argument that Sprint should be barred from asserting equitable
6 intervening rights because it was unaware of the original patent is incorrect.

7    2-Way next asserts that Sprint did not make a meaningful investment in the 64 models that
8 existed prior to the issuance of the reexamination certificate because Sprint does not manufacture the
9 phones; Sprint simply re-sells them. 2-Way asserts that the only investment Sprint makes in phones
10 that it re-sells takes place when Sprint buys the phones from manufacturers. 2-Way argues that Sprint
11 has not made pre-reexamination certificate investments in any phones manufactured after the
12 reexamination certificate issue date. 2-Way argues that because Sprint purchased, and thus, made an
13 investment in the phones after the certificate was issued, the investment cannot justify affording it the
14 protection of equitable intervening rights.

15    In response, Sprint argues that its investment has been made primarily into Sprint's network
16 which allows the allegedly infringing phones to function. Sprint claims that it spent billions of dollars
17 creating and maintaining the network. 2-Way argues that this kind of investment should not be
18 considered, and cites cases where the scope of investment considered by the court was narrow and
19 included only the physical materials that an alleged infringer had purchased.

20    2-Way is correct that many courts have looked only at the investment into inventory and
21 manufacturing, but this case is unique. As both parties point out - but only when it is convenient for
22 their argument - Sprint is not a manufacturer of phones. As such, it has purchased no manufacturing
23 materials and it does not have a large inventory of phones. Instead, Sprint invests heavily into its
24 network in order to make the network accessible to more people.

25    Under these circumstances, to hold that Sprint's investment in its network is not protected by
26 equitable intervening rights would be contrary to the doctrine. Sprint should not be barred from the
27 benefit of equitable intervening rights simply because it does not manufacture and it does not deal with
28

**James C. Mahan**
**U.S. District Judge**

- 6 -

1  the kinds of physical products that most defendants in patent infringement claims do.

2      2-Way does cite to cases in which courts have made investment determinations based off of only manufacturing and inventory, however the courts have not specifically limited the application of the doctrine to like cases. The court will consider the investments that Sprint made in its network while determining if Sprint is protected by equitable intervening rights.

    *a. Factors to be considered when determining whether equitable intervening rights should apply*

    Courts have identified a wide range of factors when determining whether equitable intervening rights should be granted. The parties focus on the six factors laid out in *Visto Corp. v. Sproqit Technologies, Inc.*. 413 F. Supp. 2d 1073, 1090 (N.D. Cal. 2006). The court may consider other factors, such as the relative degrees of good or bad faith exercised by the parties. *Bendix Commercial Vehicle Sys., LLC, v. Haldex Brake Prods. Corp.*, WL 55969 at *1 (N.D. Ohio Jan. 3, 2011).

    The first *Visto Corp.* factor examines "whether 'substantial preparation' was made by the infringer before the reissue" or reexamination. *Visto Corp.*, 413 F. Supp. 2d at 1090. Sprint clearly made substantial preparations before the reexamination certificate was issued. Sprint invested billions of dollars into its network in order to achieve consistent and reliable push-to-talk functionality. Additionally, Sprint made the business decision to develop and promote push-to-talk phones. Accordingly, this factor weighs in the favor of Sprint.

    The second factor looks at whether the infringer continued its activities in reliance "on advice of it's patent counsel." *Id.* 2-Way argues that because Sprint was not aware of the original patent, it cannot have relied on its patent counsel. While 2-Way is correct, as discussed above, Sprint's lack of knowledge does not hurt its equitable intervening rights claim. On the other hand, as discussed earlier, Sprint had constructive knowledge of the '797 patent because it had been registered. While Sprint did not have actual awareness of the patent, Sprint might have become aware of the patent if Sprint did seek the advice of patent counsel. Because Sprint did not rely on any advice from patent counsel and it was on constructive notice of the patent, this factor weighs in the favor of 2-Way.

. . .

**James C. Mahan**
**U.S. District Judge**

The third factor looks at whether Sprint had any "existing orders or contracts" for the allegedly infringing phones at the time the reexamination was completed. *Id.* It is likely that Sprint would have phones on order at the time that the reexamination certificate was issued, but Sprint has not provided any evidence of this. Sprint argues that while it did not provide any evidence of existing orders, the court should overlook this failure and instead focus on Sprint's "business commitments" that were ongoing at the issuance of the reexamination certificate.

Sprint points to contractual relationships that it has with Motorola and other phone manufacturers as evidence that Sprint had business commitments which should be considered under this factor. The court can assume that Sprint probably had phones on order at the time that the reexamination certificate was issued, but Sprint has not made a showing that the orders were significant. Sprint did have business commitments, but again, Sprint has failed to show the scope of these agreements. With the amount of information available to the court, this factor weighs in 2-Way's favor.

The fourth factor considers "whether non-infringing goods can be manufactured from the inventory used to manufacture the infringing product and the cost of conversion." *Id.* This consideration alone demonstrates the difficulty in applying the traditional factors to this case. Sprint does not manufacture the phones, and therefore Sprint does not have inventory that can be used in an alternative manner. This factor is not applicable to this case and favors neither Sprint nor 2-Way.

The fifth factor looks at "whether there is a long period of sales and operations before the patent reissued from which no damages can be assessed." *Id.* Both Sprint and 2-Way believe that this factor weighs heavily towards their respective side. 2-Way argues that Sprint launched the first allegedly infringing phone in 2001, and the patent reexamination certificate was issued in 2008. Accordingly, 2-Way argues that Sprint had 7 years to recoup its investment.

In response, Sprint argues that it spent over $37.5 billion in a merger with Nextel to begin to utilize the push-to-talk functionality and it did not make that money back in the 7 years between the release of the first allegedly infringing phone and the issuance of the reexamination certificate. Sprint does not provide the court with any numbers other than the cost of the merger, and this makes it

James C. Mahan
U.S. District Judge

- 8 -

difficult for the court to come to a determination on this issue. Sprint does argue that it de-emphasized its push-to-talk features during the 7 year period in question. Because Sprint did not provide the court with adequate information for the court to ascertain whether or not it was able to recoup its investment before the reexamination certificate was issued, this factor weighs in the favor of 2-Way.

The sixth factor is "whether the infringer has made profits sufficient to recoup its investment." *Id.* Sprint similarly fails to present any evidence determining whether it has made a profit sufficient to recoup its investment in the network, so the court is unable to evaluate this factor.

Another factor that can be examined is the good or bad faith actions of the parties. There is no evidence that Sprint acted in bad faith by intentionally infringing the patent. Sprint argues that there is bad faith on the part of 2-Way. Sprint alleges that 2-Way was aware of Sprint's alleged infringement and did nothing about it until immediately prior to the expiration of the patent. Sprint further alleges that 2-Way sent notices of infringement to a number of other companies beginning in 2004, and that it decided not to send one to Sprint. While these actions may factor into an equity analysis, Sprint has failed to provide any evidence to support these claims. Without supporting evidence, the court is unable to determine whether or not 2-Way acted in bad faith.

After examining the *Visto Corp.* factors the court finds that Sprint has not provided enough evidence warranting summary judgment as to the applicability of intervening rights as a whole.

## III. Conclusion

Both parties agree that absolute intervening rights are appropriate for all phones that were physically produced or on order before the reexamination certificate was issued. Summary judgment is appropriate on this issue.

However, Sprint has failed to demonstrate that it is entitled to equitable intervening rights. The *Visto Corp.* factors show that it would not be equitable for the court to shield Sprint from liability for infringing products that were produced after the issuance of the reexamination certificate.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Sprint's motion for summary judgment on the issue of intervening rights (doc. # 134) is GRANTED IN PART as to absolute

James C. Mahan
U.S. District Judge

- 9 -

intervening rights and DENIED as to the issue of equitable intervening rights.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that 2-Way will be barred from recovering damages for phones that physically existed or were on order on September 2, 2008, due to the application of absolute intervening rights.

DATED June 27, 2014.

_____
UNITED STATES DISTRICT JUDGE