**SNELL & WILMER**
Greg Brower (Nevada Bar No. 5232)
3883 Howard Hughes Parkway
Suite 1100
Las Vegas, Nevada 89169
Tel:  (702) 784-5200
Fax: (702) 784-5252
Email:   gbrower@swlaw.com

**KILPATRICK TOWNSEND & STOCKTON LLP**
William H. Boice (*Pro Hac Vice*)
Steven D. Moore (*Pro Hac Vice*)
Kristopher L. Reed (*Pro Hac Vice*)
Christopher Schenck (*Pro Hac Vice*)
1100 Peachtree Street, Suite 2800
Atlanta, GA  30309-4528
Tel:  (404) 815-6500
Fax: (404) 815-6555
Email:    bboice@kilpatricktownsend.com
          smoore@kilpatricktownsend.com
          kreed@kilpatricktownsend.com
          cschenck@kilpatricktownsend.com

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| 2-WAY COMPUTING, Inc. a Nevada corporation,<br><br>             Plaintiff,<br><br>     v.<br><br>SPRINT SOLUTIONS, INC., a Delaware corporation; NEXTEL FINANCE COMPANY, a Delaware corporation; SPRINT UNITED MANAGEMENT COMPANY, a Kansas corporation; NEXTEL OF CALIFORNIA, INC., a Delaware corporation; NEXTEL BOOST OF CALIFORNIA, LLC, a Delaware limited liability company, and NEXTEL COMMUNICATIONS, INC., a Delaware corporation,<br><br>             Defendants.<br>AND RELATED COUNTERCLAIM | Case No. 2:11-cv-00012-JCM-PAL<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY OF MICHELE M. RILEY** |

Defendants Sprint Solutions, Inc., Nextel Finance Company, Sprint United Management Company, Nextel of California, Inc., Nextel Boost of California, LLC, and Nextel Communications, Inc. (collectively, "Sprint") submit this Reply in Support of its Motion to Exclude the Testimony of Michele M. Riley, Dkt. 181 ("Mot."). As explained further below, Ms. Riley's opinions are unreliable and should be excluded.

## MEMORANDUM OF POINTS AND AUTHORITIES

2-Way does not have a patent on Push-to-Talk ("PTT"). 2-Way cannot dispute that fact—the Court has explicitly ruled that the '797 patent does not cover some PTT products, including Sprint's QChat products. Clarification Order at 2, Dkt. 162; Summary Judgment Order at 7, Dkt. 160. Nonetheless, 2-Way's damages expert, Ms. Riley, uses the total value of Sprint's PTT products (the $5 per month Sprint charged some of its customers for PTT service in the past) as the royalty base in her damages analysis—i.e., she failed to apportion the royalty to the patented functionality. Under binding Federal Circuit law, this is improper.

Further, despite 2-Way's assertions otherwise, Ms. Riley did in fact use an improper 50% profit splitting to come to her proposed royalty rate and never tied that profit-splitting theory to the facts of this case. This is also improper under binding Federal Circuit law.

Finally, Ms. Riley relied on licenses she admitted "are not for Push-to-Talk" and are not "fully comparable" to the hypothetical license between 2-Way and Sprint. Once again, under binding caselaw, Ms. Riley's reliance on these non-comparable licenses is improper.

These errors render Ms. Riley's testimony wholly unreliable. 2-Way has not met its burden to "sufficiently tie the expert testimony on damages to the facts of the case." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011) (internal quotations and alternations omitted); *see also Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987). Ms. Riley's testimony thus must be excluded. *Uniloc*, 632 F.3d at 1315 ("If the patentee fails to tie [its damages theory] to the facts of the case, the testimony must be excluded.").

2-Way suggests that even if the Court decides that certain of Ms. Riley's methods were inappropriate, it should nonetheless allow her to testify because she also relied on other, appropriate

1  methods. But the inappropriate methods were the sole bases for her royalty rate opinion, and the
2  entirety of her testimony should be excluded.

3  **I.     ARGUMENT**

4     **A.     Ms. Riley's Failure to Properly Apportion is Fatal.**

5  Under binding Federal Circuit law, "proof of damages must be carefully tied to the claimed
6  invention itself." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1324 (Fed. Cir. 2014). "No matter
7  what the form of the royalty, a patentee must take care to seek only those damages attributable to
8  the infringing features." *VirnetX, Inc. v. Cisco Sys. Inc*., 767 F.3d 1308, 1326 (Fed. Cir. Sept. 16,
9  2014).

10  Sprint charged some of its customers five dollars a month for PTT service. If the '797
11  patent covered the entirety of PTT, then that revenue arguably could be an appropriate royalty base.
12  However, the '797 patent does not cover all PTT service. The Court explicitly held as much when
13  it ruled that the Sprint QChat phones do not infringe.[1] Thus, the "infringing features" of the PTT
14  products must be something less than PTT as a whole, and the damages for infringing the patent
15  must be tied (or "apportioned") to those "infringing features." *See VirnetX*, 767 F.3d at 1326.

16  Ms. Riley admitted, and 2-Way does not dispute, that Ms. Riley did not even attempt to
17  apportion the total value of the PTT service to the "patented invention," instead relying on her
18  assumption that the patent covers the entirety of PTT. 2-Way Opp. at 4. The law clearly requires
19  that the patentee not only identify the smallest saleable unit, but also apportion the value of that unit
20  to the patented invention. *E.g.*, *Dynetix Design Solutions, Inc. v. Synopsys, Inc*., No. C 11-
21  05973PSG, 2013 WL 4538210, at *3 (N.D. Cal. Aug. 22, 2013) ("[A]pportionment is required even
22  where [] the accused product is the smallest salable unit or where whatever the smallest salable unit
23  is it is still a multi-component product encompassing non-patent related features."); *VirnetX*, 767
24  F.3d at 1327 (finding that the jury instruction was incorrect as it "mistakenly suggests that when the
25  smallest salable unit is used as the royalty base, there is necessarily no further constraint on the

---

[1] 2-Way argues that since QChat phones were not introduced until 2007, the fact that those phones do not infringe is somehow irrelevant. 2-Way Opp. at 8. But the time the QChat phones were introduced makes no difference. That the QChat phones do not infringe merely shows that 2-Way's patent does not cover PTT in its entirety. Instead, the patent only arguably covers some subset of PTT—the so-called allegedly "infringing features."

- 2 -

selection of the base."); *Rembrandt Social Media, LP v. Facebook, Inc.*, No. 1:13-cv-158, 2013 WL 6327852, at *5 (E.D. Va. Dec. 3, 2013) ("The smallest salable unit must be closely tied to the patent to suffice, and further apportionment is required even when the accused product is the smallest salable unit") (citation and punctuation omitted). Here, even if Ms. Riley had identified the smallest salable unit (the five dollar per month charge), that does not end the inquiry. She was required to apportion that five dollars a month to account for the value that the ***patented features*** contributed to that revenue, and she failed to do so.

As the Northern District of California found on a similar issue, "[b]ecause [the patentee's damages expert] relied on the blanket assumption that, once he selected the smallest salable unit . . . he could end the analysis, his determination of the royalty base is fundamentally flawed." *Dynetix*, 2013 WL 4538210, at *4. "[The patentee's damages expert] improperly skipped this task of apportionment, and his opinion may be excluded on this basis alone." *Id*. Because Ms. Riley failed to apportion, Ms. Riley's analysis is fundamentally flawed and should be excluded.

2-Way complains that apportionment would be "unworkable" and "virtually impossible." *Id.* at 1. But in *VirnetX*, the Federal Circuit acknowledged that the legally required apportionment could be difficult, but required it nonetheless:

> In reaching this conclusion, we are cognizant of the difficulty that patentees may face in assigning value to a feature that may not have ever been individually sold. However, we note that we have never required absolute precision in this task; on the contrary, it is well-understood that this process may involve some degree of approximation and uncertainty.

*VirnetX*, 767 F.3d at 1328. Just because apportionment may be difficult does not mean 2-Way can unilaterally decide not to do it.

2-Way's attempt to equate the current situation with the facts in *LaserDynamics* and *VirnetX* is unavailing. 2-Way argues that the court in those cases "did not suggest that the [smallest saleable unit] be further apportioned." 2-Way Opp. at 6-7. But the Federal Circuit did exactly that in *VirnetX* by stating that finding the smallest salable unit "is simply a step toward meeting the requirement of apportionment." *VirnetX*, 767 F.3d at 1327. As demonstrated by the cases cited above, the next step is to apportion the value of smallest saleable unit to the "infringing features" of

- 3 -

that unit. *E.g.*, *Dynetix*, 2013 WL 4538210, at *3. Ms. Riley simply identified the smallest salable unit and stopped. Her failure to even attempt to apportion the value to the "infringing features" renders her testimony and opinion unreliable.

### B.    Ms. Riley's Use of an Assumed 50% Profit Split Is Fatal.

In *VirnetX,* the Federal Circuit expressly rejected using a 50% profit split (also referred to as the Nash Bargaining Solution) as the starting point for a reasonable royalty calculation based solely on the *ipse dixit* of an expert. *See VirnetX*, 767 F.3d at 1331-34. But Ms. Riley did just that. As 2-Way admits, "*[b]efore* beginning her *Georgia-Pacific* analysis," Ms. Riley used a 50% profit split to determine the royalty rate that 2-Way would seek, and the ceiling on the royalty rate Sprint would pay. 2-Way Opp. at 12 (emphasis added). Put another way, Ms. Riley used a 50% profit split as the baseline from which she started her damages analysis. *E.g.*, Riley Report at ¶ 72-75 (discussing her use of the 50% profit split to arrive at the "reference range for the negotiation" before performing her *Georgia-Pacific* analysis). Under *VirnetX*, using a 50% profit split as a starting point is improper unless the expert somehow ties the use of that split to the facts of the case. Ms. Riley did not do so, and 2-Way does not argue that she did.

That Ms. Riley performed a *Georgia-Pacific* analysis after starting with the improper 50% profit split makes no difference. "Beginning from a fundamentally flawed premise and adjusting it based on legitimate considerations specific to the facts in the case nevertheless results in a fundamentally flawed conclusion." *VirnetX*, 767 F.3d at 1333 (quoting *Uniloc*, 632 F.3d at 1317). Ms. Riley's opinions are fundamentally flawed, and her testimony should be excluded.

### C.    Ms. Riley's Use of Non-Comparable Licenses Renders Her Testimony Unreliable.

"The testimony of a damages expert in a patent suit who relies on non-comparable licenses in reaching his royalty rate ***should be excluded***." *DataQuill Ltd. v. High Tech Computer Corp.*, No. 08CV543-IEG BGS, 2012 WL 1284381, at * 4 (S.D. Cal. Apr. 16, 2012) (emphasis added). Ms. Riley relied on licenses she admitted "are not for Push-to-Talk" and are not "fully comparable" to the hypothetical license between 2-Way and Sprint in reaching her royalty rate. *See* Ex. B to Mot., Dkt. 181, Riley Dep. 196:8-14 ("I don't think they are fully comparable. They are not for

1 Push-to-Talk."); *see also id.* at 178:13-179:6. By law, her testimony must be excluded. *Id.*; *see also ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 at 871 (Fed. Cir. 2010) ("[The expert] did not even attempt to show that these agreements embody or use the claimed technology or otherwise show demand for the infringed technology. . . . The . . . licenses simply have no place in this case.").

Despite Ms. Riley's repeated statements to the contrary, 2-Way now claims that the licenses she relied on are comparable because they "relate to digital voice communications, and several related to VoIP technology." 2-Way Opp. at 9. But 2-Way has provided ***no evidence*** that the technology discussed in those licenses is comparable to the technology disclosed in the '797 Patent, and instead relies solely on attorney argument for that point.[2] *Id.* Beyond that, Ms. Riley explicitly admitted that those technologies are different. *See* Ex. B to Mot., Dkt. 181, Riley Dep. 178:19-179:6 ("There's talking to people on your wireless device and there is Push-to-Talk and the two things are different."). As the Federal Circuit has made clear, "[w]hen relying on licenses to prove a reasonable royalty, alleging a loose or vague comparability between different technologies or licenses does not suffice." *VirnetX,* 767 F.3d at 1330 (citation omitted). Allowing Ms. Riley to testify about these licenses in the absence of any verifiable evidence that the licenses are comparable would be clear error.

2-Way argues that "even if this Court were to exclude the agreements, it should not exclude Riley's damages opinion . . . because the agreements are not necessary to that opinion[.]" Resp. at 11. However, Ms. Riley testified that the ***sole basis*** for the royalty rate range that she opined that 2-Way would accept was based on the licenses:

> Q: [W]here did you get the range from for 2-Way of the .375 percent to the 5.5 percent?

---

[2] 2-Way alleges that VoIP is "functionally similar to the patented technology," and thus Ms. Riley's reliance on VoIP licenses is reasonable. But only two of the eight licenses Ms. Riley relied on relate to VoIP. Beyond that, 2-Way's allegation is based on "Voice over Internet Protocol (VoIP)," a document 2-Way submitted to support its Opposition. This document had not been previously produced in discovery or otherwise, and there is no way that Ms. Riley could have relied on it in writing her report.

- 5 -

|   |   |   |
|---|---|---|
| 1 | A: | That's from those public license agreements that I pulled from our |
| 2 |   | database, and like I said when we discussed them, I don't think they |
| 3 |   | are fully comparable. |
| 4 |   | … |
| 5 | Q: | For 2-Way's reference point, was there any other basis for the point |
| 6 |   | 3.75 [*sic*] percent to 5.5 percent other than the public licenses, those |
| 7 |   | license agreements? |
| 8 | A: | Those numbers come from the public license agreements. |

*See* Ex. B to Mot., Dkt. 181, Riley Dep. 196:8-14.  These licenses were necessary to Ms. Riley's opinion, and excluding the licenses leaves no additional facts on which Ms. Riley can base her opinions.  As Ms. Riley testified, these licenses were the sole means for her determination of the royalty rate range she opined 2-Way would accept.

2-Way's reliance on *Energy Transp. Grp., Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1357 (Fed. Cir. 2012) is misplaced.  2-Way argues that under *Energy*, a court can allow an expert to testify even if he used an impermissible methodology "when he also relied on other factors . . . to reach his conclusion."  2-Way Opp. at 11.  But in *Energy*, the expert in question had "***provided an entirely separate damages analysis*** that supported the jury's verdict," an analysis that was not challenged as impermissible.  *Energy*, 697 F.3d at 1357.  Here, Ms. Riley did not provide any separate, untainted analysis.  Her sole analysis relies on non-comparable licenses, in addition to utilizing the improper 50% profit split.  As such her testimony must be excluded.  *See DataQuill*, 2012 WL 1284381, at * 4.

Once again, that Ms. Riley performed a *Georgia-Pacific* analysis after improperly relying on non-comparable licenses to arrive at her starting royalty range does nothing to fix her flawed methodology.  See *VirnetX*, 767 F.3d at 1333 ("Beginning from a fundamentally flawed premise and adjusting it based on legitimate considerations specific to the facts in the case nevertheless results in a fundamentally flawed conclusion.").  That Ms. Riley also mentioned a license 2-Way offered to Cisco, but which was never agreed to, similarly makes no difference.  As Ms. Riley testified, she did not rely on that license because it "***is not probative, in terms of an end result, of a***

*reasonable royalty rate applicable to this case.*"   Riley Report at ¶53 (emphasis added). Ms. Riley's analysis was fundamentally flawed from the beginning; its flaws cannot be fixed.

## II.     CONCLUSION

For the reasons set forth above, as well as set forth in Sprint's Motion to Exclude the Testimony of Michele M. Riley, Sprint respectfully requests that the Court exclude Ms. Riley's testimony in its entirety.

Dated: December 3, 2014                          Respectfully submitted,

**KILPATRICK TOWNSEND & STOCKTON LLP**

*s/Christopher Schenck*
Christopher Schenck (*Pro Hac Vice*)
cschenck@kilpatricktownsend.com
1420 Fifth Avenue, Suite 4400
Seattle, WA 98101
Tel:    (206) 467-9600
Fax:    (206) 623-6793

Steven D. Moore (*Pro Hac Vice*)
smoore@kilpatricktownsend.com
Two Embarcadero Center, Eighth Floor
San Francisco, CA  94111
Tel:    (415) 576-0200
Fax:    (415) 576-0300

William H. Boice (*Pro Hac Vice*)
bboice@kilpatricktownsend.com
1100 Peachtree Street, Suite 2800
Atlanta, GA  30309
Tel:    (404) 815-6500
Fax:    (404) 815-6555

Kristopher L. Reed (*Pro Hac Vice*)
kreed@kilpatricktownsend.com
1400 Wewatta Street, Suite 600
Denver , CO 80202
Tel:    (303) 571-4000
Fax:    (303) 571-4321

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SNELL & WILMER LLP**

Greg Brower (Nevada Bar No. 5232)
gbrower@swlaw.com
3883 Howard Hughes Parkway
Suite 1100
Las Vegas, Nevada 89169
Tel:   (702) 784-5200
Fax:   (702) 784-5252

*Attorneys for Defendants*
*Sprint Solutions, Inc., Nextel Finance Company,*
*Sprint United Management Company, Nextel of*
*California, Inc., Nextel Boost of California, LLC,*
*and Nextel Communications, Inc.*

**CERTIFICATE OF SERVICE**

I, the undersigned, declare under penalty of perjury, that I am over the age of eighteen (18) years. On this date, I caused to be served a true and correct copy of the foregoing **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY OF MICHELE M. RILEY** by the method indicated:

| | |
|---|---|
| ___XXX___ | by the Court's CM/ECF Program |
| _____ | by U. S. Mail |
| _____ | by Facsimile Transmission |
| _____ | by Electronic Mail |
| _____ | by Federal Express |
| _____ | by Hand Delivery |

Mark Borghese, Esq.
**BORGHESE LEGAL, LTD.**
10161 Park Run Drive, Suite 150
Las Vegas, NV 89145
Phone: (702) 382-4804
Fax: (702) 382-4805
Email: mark@borgheselegal.com

*Attorneys for Plaintiff*

Paul A. Stewart, Esq.
Steven A. Maddox, Esq.
Irfan A. Lateef, Esq.
Cheryl T. Burgess, Esq.
Baraa Kahf, Esq.
**KNOBBE MARTENS OLSON
    & BEAR LLP**
2040 Main St, 14th Floor
Irvine, CA 92614
Email: paul.stewart@kmob.com
Email: steve.maddox@knobbe.com
Email: ilateef@kmob.com
Email: cheryl.burgess@kmob.com
Email: baraa.kahf@knobbe.com

*Attorneys for Plaintiff*

DATED: December 3, 2014

*s/Christopher Schenck*
Christopher Schenck