UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| 2-WAY COMPUTING, INC., | Case No. 2:11-CV-12 JCM (PAL) |
| Plaintiff(s), | ORDER |
| v. | |
| SPRINT SOLUTIONS, INC., et al., | |
| Defendant(s). | |

Presently before the court is defendants Sprint Solutions, Inc., Nextel Finance Company, Sprint United Management Company, Nextel of California, Inc., Nextel Boost of California, LLC, and Nextel Communications, Inc.'s (collectively "Sprint") motion *in limine* to exclude the testimony of plaintiff's expert Michele M. Riley ("Riley"). (Doc # 181). Plaintiff 2-Way Computing ("2-Way") filed a response, (docs. ## 188 and 193), and Sprint filed a reply, (doc. # 198).[1] 2-Way has filed several notices of supplemental authority, (docs. ## 208 and 222), to which Sprint replied to the second notice (doc. # 224). Sprint also filed a notice of supplemental authority. (Doc. # 219).

**I.  Background**

This is an action brought by 2-Way for patent infringement. 2-Way accuses Sprint of infringing U.S. Patent No. 5,434,797, entitled "Audio Communication System for a Computer and Network" ("the '797 patent"). (Doc. # 1 at 2). 2-Way describes the patent as an audio communication system that allows the user to talk with other users over a shared network. Rather than having to rely on traditional telephone lines, the user can use a computer to place a call and

---

[1] Documents 181 and 182, and 188 and 193 are the sealed and unsealed versions of the same motion. All references in this order cite to sealed documents.

**James C. Mahan**
**U.S. District Judge**

continue to work on other applications and perform other tasks while the audio communication system is operating. (*Id.* at 6). 2-Way asserts that Sprint has infringed on 23 claims of the '797 patent with products that use the Push To Talk ("PTT") feature. (Doc. # 56 at 4).

Robert Barrus is named as the inventor of the '797 patent, which was issued by the U.S. Patent Office on July 18, 1995. (Doc. # 1 at 6).

On June 13, 2014, this court granted partial summary judgment for Sprint and dismissed the issues under the doctrine of equivalents, but denied summary judgment regarding the issues of literal infringement. (Doc. # 160). The court held that audio data packets must consist of status information, audio data, and an arbitration value to constitute an infringement on claim 6. (*Id.* at 8–9). The parties have stipulated for trial to begin at the court's convenience after August 24, 2015. (Doc. # 185 at 11). Sprint has filed the instant motion *in limine*. (Doc. # 180).

**II.     Legal standard**

"The court must decide any preliminary question about whether . . . evidence is admissible." Fed. R. Evid. 104. Motions *in limine* are procedural mechanisms by which the court can make evidentiary ruling in advance of trial, often to preclude the use of unfairly prejudicial evidence. *United States v. Heller*, 551 F.3d 1108, 1111–12 (9th Cir. 2009); *Brodit v. Cambra*, 350 F.3d 985, 1004–05 (9th Cir. 2003).

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1980). Motions *in limine* may be used to exclude evidence in advance of trial. *See* Fed. R. Evid. 103; *United States v. Williams*, 939 F.2d 721, 723 (9th Cir. 1991) (affirming district court's ruling *in limine* that prosecution could admit impeachment evidence under Fed. R. Evid. 609).

Judges have broad discretion when ruling on motions *in limine*. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002); *see also Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir. 1999) ("The district court has considerable latitude in performing a Rule 403 balancing test and we will uphold its decision absent clear abuse of discretion.").

"*In limine* rulings are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord. Luce*, 469 U.S. at 41 (noting that *in limine* rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner).

**III.   Discussion**

### A. *The smallest salable unit is the PTT feature and not the patented feature; thus Riley properly apportioned her royalty damages.*

As an initial matter, unless the "issues are not unique to patent law," *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 66 (Fed. Cir. 2012), "[a] district court must . . . follow Federal Circuit precedent in a case arising under the patent laws . . . ." *Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469, 475 (Fed. Cir. 1991).

A reasonable measure of royalty damages is the result of a hypothetical negotiation between the parties at the time the infringement began. *VirnetX, Inc., v. Cisco Sys., Inc.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014). The calculation of royalty damages must be "the minimum amount of infringement damages 'adequate to compensate for the infringement[,]'" and "[s]uch damages must be awarded 'for the use made of the invention by the infringer.'" *LaserDynamics*, 694 F.3d 51, 66–67 (Fed. Cir. 2012) (quoting 35 U.S.C. § 284). "[The] proof of damages must be carefully tied to the claimed invention itself." *Apple Inc. v. Motorola Inc.*, 757 F.3d 1286, 1324 (Fed. Cir. 2014).

The damages should not be based on the entire product, but instead on the "smallest salable patent-practicing unit." *LaserDynamics*, 694 F.3d at 67 (quoting *Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 283 (N.D.N.Y. 2009)). "[A]pportionment is required even where [] the accused product is the smallest salable unit or where whatever the smallest salable unit is it is still a multi-component product encompassing non-patent related features." *Dynetix Design Sols., Inc.v. Synopsys, Inc.*, No. C 11-05973PSG, 2013 WL 4538210, at *3 (N.D. Cal. Aug. 22, 2013). Damages may be based on the entire value of the accused product only if the patented functionality is the "basis for consumer demand" of the accused product. *Lucent Techs., Inc., v. Gateway, Inc.*, 580 F.3d 1301, 1337 (Fed. Cir. 2009).

James C. Mahan
U.S. District Judge

- 3 -

Thus, "the requirement that a patentee identify damages associated with the smallest salable patent-practicing unit is simply a step towards meeting the requirement of apportionment." *VirnetX*, 767 F.3d at 1327. Therefore, unless the patented feature creates the basis for consumer demand, apportionment is required. *LaserDynamics*, 694 F.3d at 68.

Sprint argues that Riley has failed to properly apportion her damages according to the patented features because she used the entire $5 PTT monthly fee[2] as the royalty base. (Doc. # 182 at 9). The use of the entire monthly fee is inappropriate because the patented technology does not drive the entire demand for the PTT feature; therefore Sprint argues the value assigned should be less than the entire monthly fee. (*Id.*). This failure to properly apportion the costs to the patented features renders Riley's opinion inadmissible according to Sprint. (*Id.*).

2-Way responds that Riley properly apportioned the patented feature to the PTT, which is smallest salable unit. (Doc. # 188 at 9). Citing *LaserDynamics*, 2-Way argues apportionment must be to the smallest salable unit, not the patented feature. 694 F.3d at 56, 68. (Doc. # 188 at 8–9). Since the PTT feature is the smallest salable unit, further apportionment to the patented feature is not required. (*Id.* at 9).

*LaserDynamics* involved a controversy over a patented feature which allowed an optical disk drive ("ODD") to automatically determine whether the inserted disk was a compact disc or a digital video disc. 694 F.3d at 56–57. Without the patented feature, a user would have to manually select the disc type to start playback. *Id.* at 57. Quanta Storage, Inc. ("QSI") manufactured ODDs. Quanta Computer, Inc. ("QCI"), QSI's parent company, would install those ODDs in the laptop assembly process. *Id.* at 58.

LaserDynamics' expert witness calculated damages using the entire laptop as a royalty base. *Id.* at 61. He eventually determined that a laptop would add a 6% royalty for an ODD. *Id.* at 60. The ODD was "responsible for one-third of the value of a laptop computer," and the estimated patented feature royalty should be 2% of the entire value of the laptop. *Id.* at 61. Applying this percentage to all laptop sales, the expert estimated damages valued at $52.1 million. *Id.*

---

[2] The $5 PTT monthly fee is what Sprint charged a user for the PTT feature monthly. (Doc. # 182–1 at 10).

1    QCI argued that LaserDynamics was incorrect in basing its damages on the value of the entire laptop. *Id.* Instead, damages should be based upon similar license agreements for an ODD. *Id.* QCI asserted that based upon 16 licenses in evidence which ranged between $50,000 and $266,000, the actual damages should be $500,000. *Id.*

The Federal Court held that it was impermissible to calculate damages based upon the entire product "without showing that the demand for the entire product is attributable to the smallest patented feature" for multi-component products. *Id.* at 67–68. Because LaserDynamics failed to show that the accused product was the reason for consumers purchasing the laptop, its "theory of damages was legally unsupportable." *Id.* at 68, 70.

Here, the patented feature is a part of the PTT function. (Doc. # 182 at 4, doc. # 188 at 2). The PTT feature is the smallest salable unit, and thus further apportionment is not required. Similar to the Federal Circuit's required apportionment to the ODD but not to the patented feature in *LaserDynamics*, Riley was not required to apportion the damages to the patented feature, just to the smallest salable unit. Riley did so. Accordingly, the court denies the motion *in limine* on these grounds.

### B. Riley's cap on a reasonable royalty rate was not used to determine the final royalty rate, and thus does not render her opinion unreliable and inadmissible.

Relying on a rule of thumb or arbitrary split without first tying that split to the facts of the case renders an expert's opinion unreliable and inadmissible. *VirnetX*, 767 F.3d at 1332–34.

Sprint argues Riley's use of a 50/50 split of the profit between the two parties without first tying it to the facts of the case is unreliable and inadmissible according to *VirnetX*. (Doc. # 182 at 13).

2-Way responds that Riley did not apply a 50/50 split that affected the final royalty rate. (Doc. # 188 at 15). Rather, Riley started her analysis with the assumption that Sprint would have not paid more than 50% of its royalty. (*Id.*). This split did not create a starting point for Riley's analysis; it just created a cap that Riley would check her analysis against. (*Id.*). Thus, the final royalty rate would remain unchanged if the split was removed because the split was not the starting point in the royalty rate calculations. (*Id.*).

James C. Mahan
U.S. District Judge

- 5 -

In *VirnetX*, the plaintiff's expert estimated incremental profits associated with a software feature, applied a 50/50 split, and adjusted the remaining amount based upon the relative bargaining power of the two parties. *Id.* at 1331.

The Federal Circuit rejected the methodology employed by plaintiff's expert because he did not tie a 50/50 split to the case's specific circumstances. *Id.* at 1332. The court explained that applying a 50/50 split at the starting point without first tying the split to the facts of the case renders the expert's analysis inadmissible because the hypothetical royalty rate was based on an unreliable starting point. *Id.* at 1332–34.[3]

It is disputed whether Riley used the 50/50 split to determine the final royalty rate. (Doc. # 188 at 15; doc. # 182 13–14). 2-Way states that her rate would remain the same. (Doc. # 188 at 16). Sprint says that the 50/50 split did affect her rate, but has provided no information to the court that would indicate that the rate would change.[4] (Doc. # 182 at 13–14). The simple test to determine if the 50/50 split was a factor in Riley's royalty rate calculations is if Riley's royalty rate would remain the same if the 50/50 split was removed from her analysis.

The court has found no rule that prohibits a damage expert from performing an analysis using a rule of thumb to determine a range of an acceptable royalty rates, so long as the actual calculated royalty rate is determined using accepted methodologies.

Absent evidence that Riley's 50/50 split would have changed her final royalty rate, Riley's use of a rule of thumb to determine an acceptable range of royalty rates and then calculating the actual royalty rate according to accepted methodologies does not render her opinion unreliable

---

[3] The court quoted *Uniloc USA v. Microsoft Corp.*, 632 F.3d 1292, 1317:

> It is of no moment that the 25 percent rule of thumb is offered merely as a starting point to which the *Georgia-Pacific* factors are then applied to bring the rate up or down. Beginning from a fundamentally flawed premise and adjusting it based on legitimate considerations specific to the facts of the case nevertheless results in a fundamentally flawed conclusion.

*VirnetX*, 767 F.3d at 1333 (internal citations omitted).

[4] Riley's calculations were not included in doc. # 182's exhibits; thus, the court cannot determine if the rate would change should Riley's cap be removed from the equation. There is nothing to prohibit Sprint from examining Riley's calculations and presenting such evidence to the court at a later date.

because it does not affect her final calculation. Therefore, the court denies the motion *in limine* on these grounds.

### C. Sprint did not prove that that the license agreements were not sufficiently comparable, and thus failed to prove that Riley's opinion is unreliable and inadmissible.

License agreements may be used to form the basis of royalty calculations if they are "sufficiently comparable to the hypothetical license at issue in suit." *Lucent*, 580 F.3d at 1325. A license agreement need not be perfectly comparable to be considered when determining a royalty rate; some approximation and uncertainty is acceptable. *Id.* A district court must "exercise vigilance when considering past licenses to technologies *other* than the patent in suit." *VirnetX*, 767 F.3d at 1330 (citing *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) (emphasis in original)).

Sprint argues that Riley relied on irrelevant license agreements to determine the royalty rates which renders her opinions unreliable. (Doc. # 182 at 14). The agreements were irrelevant because they were either not fully comparable to the patented feature or were not license agreements at all, but rather jury awards. *Id.* at 14–15.

2-Way responds that the cited license agreements were not fully comparable due to the different license scopes, terms, and conditions; however, the technology was related, and thus sufficiently comparable for Riley to use in determining royalty rates. (Doc. # 188 at 12–13). 2-Way further argues that even if the license agreements were excluded, Riley's royalty rates should be admitted because she analyzed the royalty rates using other methodologies. (*Id.* at 14).

Sprint merely alleges that the license agreements were not fully comparable. It does not specify how the agreements are not sufficiently comparable or provide any reason why the agreements should not be used as a basis in determining a royalty rate. Those reasons may exist, but they were not argued in the instant motion with the specificity necessary for this court to reach a determination whether the license agreements were sufficiently comparable, and thus exclusion by motion *in limine* is inappropriate.

. . .

. . .

James C. Mahan
U.S. District Judge

- 7 -

1  Further, the court has found no rule that prohibits an expert from considering a jury verdict
2  in his royalty rate calculations if that jury verdict pertains to a matter that is sufficiently comparable
3  to the instant matter.
4  The court does not reach the issue of whether the license agreements and jury verdicts were
5  sufficiently comparable, nor does it shift the burden of proof of sufficient comparability from 2-
6  Way to Sprint when these license agreements and jury verdicts are introduced at trial. The court
7  denies this motion *in limine*.

**IV. Conclusion**

Based on the above analysis, the court finds that Sprint did not meet its burden to exclude 2-Way's damages expert, Michele M. Riley. Therefore, the court will deny Sprint's motion *in limine*.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants' motion in *limine* to exclude the testimony of Michele M. Riley regarding damages, (doc. # 181) and the same hereby is, DENIED, consistent with the foregoing.

DATED May 18, 2015.

_____
UNITED STATES DISTRICT JUDGE